# John Campbell *v.* City of York, Appellant.

*Negligence—Municipalities—Defective sidewalk.*

The Supreme Court will not reverse a judgment on a verdict in favor of the plaintiff in an action against a city to recover damages for personal injuries suffered by a fall on a defective sidewalk, where it appears that the city authorities knew of the defect, and had refused to repair the sidewalk, and the court below properly submitted to the jury the evidence of plaintiff's contributory negligence tending to show his knowledge of the condition of the sidewalk, his manner of passing over it on the night of the accident, and his acquaintance with other streets and sidewalks in the neighborhood.

*Evidence—Mortality tables—Damages—Negligence.*

Mortality tables are admissible in evidence in an action to recover damages for personal injuries, but the trial judge should instruct the jury that the value of such tables when applied to a particular case depends very much upon other matters, such as state of health, habits of life, liability to contract disease, social condition, etc.

172  205
194  106

172    205
208    ²499

Argued June 4, 1895. Appeal, No. 467, Jan. T., 1895, by defendant, from judgment of C. P. York Co., Jan. T., 1894, No. 58, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Trespass for damages for personal injuries suffered by a fall on a defective sidewalk. Before Latimer, P. J.

At the trial it appeared that plaintiff, a man forty-seven years of age, on the night of March 18, 1893, fell on a defective sidewalk on East King street in the city of York, and was seriously injured.

The plaintiff offered in evidence the mortality tables in common use by life insurance companies of this country, showing the expectancy of life at different periods, more especially to show the expectancy of life at the age at which John Campbell received this injury, in connection with the plaintiff's testimony that the physical disability of the plaintiff is permanent, and will prevent him in the future from doing manual labor for his support; for the purpose of furnishing a measure of damages to the jury by which to calculate what plaintiff is entitled to recover, if they believe his testimony.

This was objected to as irrevelant and immaterial; not proper evidence for any purpose in the case under any circumstances; that it would only be considered material, if it had been shown that the plaintiff had been doing regular work prior to the time of his fall; and that therefore it would be no guide, as the calculation would be based on nothing that he did prior to the time of the alleged accident.

It was further objected that plaintiff had proved that the troubles from which he was suffering would tend to shorten his life, and might result in sudden death; and that these tables only apply to the expectancy of life of a man of average health. Therefore they would be no guide at all in this case.

The Court: I think I will admit the offer under the case in Kraut v. Frankfort & Southwark Philadelphia City Passenger Railway Company, 160 Pa. 329. It was admitted there in a case very similar to this. I do not know the purpose given for the admission of it; but it was admitted under objection and exception, and the Supreme Court did not assign it for error.

Exception to the defendant, and bill sealed by order of court. [1]

The material facts and testimony appear by the charge of the court, which was as follows:

The city of York is a municipal corporation. It is charged with the duty of maintaining the public highways within the city in such a condition of reasonable repair as will make them safe by day and by night for their ordinary use by those who have occasion to use them as highways. Its duty extends not only to the traveled portion of the street between the pavements, but to the sidewalks also. They have control over the height, the width, the slope, the grade, etc., of sidewalks, as well as of streets; and in exercising the powers and performing the duties which are imposed upon them in this behalf, as I said before, the measure of duty and the measure of responsibility is the maintaining of the highways, or preserving them in such a condition as to make them safe and convenient for ordinary use or travel by foot passengers as well as drivers. I have already said that they have the power to control absolutely the grades, and the slopes, and the heights, and to exercise all these powers within the city of York to which the township of Springgarden is contiguous. Then, in our view of the law, the city legally exercised its powers through its duly authorized officials—by the supervisors or commissioners, whichever they are—highway commissioners, I believe they are called—by absolutely controlling the grade at this particular point, and making the same eighteen, nineteen or twenty inches above the grade of the sidewalk in the adjoining township of Springgarden.

Now, this they had a right to do. They were not bound by any rule or principle of law to adopt the grade that existed in Springgarden township, or to maintain the previously existing grade. It was a matter within the power and within the discretion of the city, so far as to determine what that grade should be; and they did determine on grades eighteen or twenty inches above the grade, as I have said already, of the adjoining township; and the pavement was laid under the orders of competent city authorities to the grade given by the city surveyor. This made an offset, as has been repeated very often in this case—a difference of elevation of about eighteen or twenty inches, so that anybody going east on that sidewalk must step down, when

he reached that place, or go down eighteen or twenty inches to continue his walk.

The city having done this—having made this change of grade—in pursuance of lawful right, was bound to protect that place.    They were bound to adopt some device, or use a device, which, notwithstanding that abrupt change of grade, would make the sidewalk still safe and convenient for ordinary passage by day and by night; for that is the measure of their responsibility.

Municipal corporations are not insurers against accident. Municipal corporations are not responsible for every injury or accident which occurs, even through slight defects in their highways and their sidewalks.    They are held to due vigilance and care ; and that always varies under the circumstances of each particular place, and each particular case.    But they are bound to that degree of vigilance and care that will, as I have already said, make their highways safe and convenient for ordinary travel; but are not insurers against accident, or guarantors of the safety of those who use these highways.

Now, the manner in which this pavement was laid, and the manner in which this abrupt descent was erected, has been detailed to you in the evidence.    Now, the city, or the private owner of the property on which the duty devolved, made a pavement to the grade that the city gave him ; and this city, or the private owner, planked up the end of that pavement, supporting the planks by stakes, and filled up the pavement to that level ;—and, as Mr. Heckert said, laid the grade or pavement up to the level of the plank.    Then the city caused to be constructed and placed there an inclined plane of timber, stated in the testimony as between five and six feet in length, and four or five feet in width,—about the width or a little wider than the brick portion of the sidewalk,—supporting one end of that with the plank that held up the bank and the upper pavement, and with the other end resting on the pavement below, with strips nailed across to prevent people from falling as they went down that slope; and thus left it after that had been done.    That was the city's method of protecting this otherwise very dangerous place ;—this place which probably,—certainly, according to the statements of some of the witnesses that testified very positively on that subject,—this place which probably

at least remained dangerous, notwithstanding that method of protection adopted by the city.

Now, there is one question for you to determine,—and that is a question of fact that you must determine from the evidence,—about which I do not want to lead you; which may be of importance; and yet in other aspects of the case it may not, notwithstanding it is a question of fact in this case :—whether in putting that slope—that platform—there in this place in the manner I have described, the city did render this place safe and convenient for ordinary travel.

In addition to the duty of erecting, providing for, and protecting against the consequences of its own action, such as the change of grade that took place here,—the elevation of sidewalks in pursuance of the orders of competent city authority,—those are the acts of the city itself,—of course the city must protect against the consequences of these, — in addition to that the municipal corporation owes another duty.   It "owes a duty of active vigilance to the public in respect to the condition of highways under its control," which binds it " to discover any defects therein within a reasonable time though those defects are caused by the negligence and acts of others. For practical purposes, the opportunity of knowing, in such cases, must stand for actual knowledge ; and, therefore, where open defects in a highway have existed for a considerable time, notice of them is implied, and is imputed to those whose duty it is to repair them ; in other words, they are presumed to have notice of such defects as they might have discovered by the exercise of reasonable diligence.   Such notice may be imputed also where a defect, though temporary, has been of frequent occurrence during a long period."   I have read from Shearman & Redfield on the Law of Negligence, section 369.

[And that brings up a question in this case about which little or nothing has been said in the testimony, or nothing has appeared in the address of either counsel,—a matter in regard to which the testimony is in a singularly vague and unsatisfactory condition ; and yet a question which, in my judgment, may become a very material, and, perhaps, controlling consideration in your determination of this case,—and that is the projection of the plank placed there by the owner of the property to support this pavement above the township pavement, which,

it was said by some of the witnesses, had sunk so as to leave a projection, the height of which no one I believe distinctly defined. If I am in error on that, I request to be corrected by counsel.

Mr. Wanner. Two inches, or more.

The Court: Two inches, or more. I believe that was said as the result of the measurement,—projected two inches or more above the pavement. Perhaps—and it is a question for you to determine—that projection was the proximate cause of this fall, resulting in this injury. If it was, the question arises, Is the city of York responsible for that? That depends upon whether the city of York had actual or constructive notice of that projection. The testimony nowhere reveals,—and it is a remarkable feature of the proof, that the testimony nowhere reveals on either side how long that projection had existed there;—and the only thing to indicate anything on that subject is the statement of the plaintiff himself, that when he passed over this place two or three months before—and it is fair to add that he said he went over it at night—he did not observe that projection.

Now, I have already said that a municipal corporation is not an insurer, or guarantor; it neither insures nor guarantees the safety of those who use its highways. It is bound to reasonable diligence in the maintaining of the highways in proper condition; it is bound to observe defects that exist in the highway, when they have existed there long enough to amount to constructive notice; it is bound to know the defects that it ought to know of,—and it ought to know of them when they have existed there long enough for due diligence to have observed them.

The question of constructive notice,—there is no actual notice brought home to this city at all, as I remember the testimony, in regard to that projection; at least to none of the officers charged with the supervision of the highways,—I think to none of them; Did they have knowledge of that projection? —No direct or formal notice is brought home to them. Had it existed long enough to affect them with constructive notice? And I say to you that the evidence is bare of anything to enable you to determine that question intelligently.

He who alleges negligence on the part of the corporation, as

in this case, must show knowledge of the projecting plank ; 'for knowledge in this case depends upon notice, actual or constructive; and constructive notice or knowledge of the danger depends upon how long it has continued,—and there is not the evidence to determine that.

Without an illustration, in the first place, I want to say that the more prominent, or obvious, or obviously patent a defect in the highway is, the shorter is the time from which the jury have a right to infer that the corporation knew what they ought by diligence to have discovered.

As an illustration of that, it was held in one case, and said to be properly holden, that where a dead horse in hot weather was allowed to lie on the streets of a city for twenty-four hours, becoming offensive, it was a matter of law for the court to tell the jury that that period of time was sufficiently long to affect the municipal corporation with notice, and to charge them with negligence in not removing.

In another case, where an accident occurred, where a gas pipe two inches in diameter extended across the street, placed there by somebody who probably had no right to put it there. And that was another matter or question, whether that gas pipe, becoming exposed in the highway,—and there was evidence that it had remained between two and three weeks exposed in that way,—the court in that case below—the trial judge said, as a matter of law, that that was a sufficient length of time to affect that municipal corporation with notice of the existence of that obstruction in the highway ; and that they were chargeable with negligence in not discovering and removing it. But the Supreme Court said no; the obstruction was not so patent, and so open to observation, or so apparent, that it was good law, or law, for the court to tell the jury that that failure to discover and remove within that two or three weeks was negligence ; and that it should have been left to the jury to determine, under all the circumstances,—considering the nature and character of the obstruction,—to determine whether the city had constructive notice or not. So here, there is testimony,— adding undoubtedly to the danger of this place, if not creating it,—of the projection of a board two inches above the pave ment, which the city was bound to discover and remedy in the exercise of vigilance which they are required to exercise to

maintain the corporation highways; and they were bound to dis-cover that, if it had remained there long enough to affect them with constructive notice,—and, if so, they are chargeable with constructive notice in not discovering it. But whether there is anything in the case from which this jury can say that that particular obstruction had existed there long enough to affect the corporation with notice, I do not undertake to say.] [2]

[I have already said that proof is bare in that respect. It may not be material. It is only material, if you find that that projection of that board entered in as a proximate cause, or one of the proximate causes;—for there may be two or three causes concurring in the production of this accident. The plaintiff did not say he stumbled over that; but he said there was some-thing there that a man might easily stumble over there in a dark night, or in the day time. If that was not the cause of the accident, then it is immaterial; because then the city is not to be held responsible for that which did not produce the acci-dent. If that was the cause of the accident, then it is very material to inquire whether it had continued long enough to affect the city with constructive notice of its existence.

Mr. Gibson: If the court please; I should like to refer to the stenographer's notes. It seems to me that the plaintiff tes-tified that his foot struck against something.

The Court: I have already said to the jury that he stumbled over something; but he did not say what.

Mr. Wanner: He did not say it was the board. [3]

The Court: [Now, so much for the condition of things at the place where this accident occurred. The nature and character of this obstruction, the change of grade, and all that sort of thing, have been fully detailed to you in the evidence; and its relative situation to the home of the plaintiff,—and about that I will talk after awhile, has been fully revealed to you in the evidence, and I have no doubt that you understand it as fully as if I were to lengthen my remarks on that particular subject.

Now, what produced this accident? Was it the negligence of the city of York? I have already fully explained to you that leaving an unguarded obstruction like this was sufficient to affect this corporation with the charge of negligence. Did they protect that slope sufficiently? If they did, what produced this accident? Was it the projection of the board above the

pavement; and, if so, is the city affected with constructive notice of that?

The next question is, Did the negligence of the plaintiff in this case contribute in the slightest degree to the accident which he met with? I want you to observe precisely the form in which I have stated that: Your next inquiry will be whether the plaintiff's negligence contributed in the slightest degree to the production of the accident from which he is suffering. If it did, then it matters not how negligent the municipal corporation was; no matter how completely or entirely they left unguarded that place; no matter whether they were fully informed of the projection of the plank which may have, and probably did, produce the accident; no matter how much notice they had in regard to it, and no matter how careless they were in regard to it; if the negligence of this plaintiff contributed in the slightest degree to that fall, there is an end of this case, and he cannot recover. It is well settled law in the commonwealth of Pennsylvania that he who brings a suit against a municipal or other corporation, or an individual, charging negligence, must show a case free from contributory negligence on his own part.] [2]

And that brings up another very important question in this case. The ordinary rule is, in the use of highways, that he who knows of a dangerous obstruction or place in the highway, and voluntarily tests it, when he knew of a safer route that he could have taken, even though less convenient or longer, is guilty of contributory negligence, because it is his duty to take the safer route. Among the uncontradicted facts in this case is the fact that the opposite side of East King street, at the very point where this accident occurred, was safe and convenient for travel by night and by day. If the plaintiff, John Campbell, knew of the dangerous condition of this place,—and when I say its dangerous condition, I include all the elements which enter in to make it dangerous,—if he was fully informed, and voluntarily tested it, or passed along there on a dark night forgetting all about it, he is guilty of contributory negligence, and cannot recover, notwithstanding any degree of negligence on the part of the city.

Now, did he know it? The testimony is very full in regard to his residence, his proximity to the place where he met with

the accident, and his opportunity of observation. He had passed along that side of the street several times;—according to his testimony, the last time was two or three months before he met with this accident. He passed along there then at night, walking with his daughter. He says the boards were sloping,—the incline was in place,—and he got over it without difficulty; that he did not observe—at all events he did not encounter any obstacle from the projection of the board.

Now, I have already explained to you that one of the questions in the case is as to the sufficiency of the method adopted by the city for the protection of that place, and the protection of this slope. This man passed down there at night. Was it then in such a reasonably safe condition as made it proper, and not careless, for a man to undertake to walk over it at night; or were there then existing, or did he have knowledge, before he met with this accident, that the conditions had changed, and that special and additional peculiar circumstances had arisen which rendered the place more dangerous than it was before; or that, if it was safe before, rendered it dangerous? If John Campbell knew that that inclined plane was not along there when he undertook to pass over it, and met with this accident,— if he knew that the projection of that board above the pavement existed there, or had been there when he passed over it safely before,—if he knew of the change which had taken place making the place more dangerous than it was when he passed over it before, he had no right to take the risk, and test this dangerous place, and then undertake to hold the city responsible for the consequences of their negligence, and his negligence contributed to the production of the accident. And there you will observe is involved a very important question; and that is as to the sufficiency,—and I have referred to it two or three times already, but I refer to it again,—as to the sufficiency of the measures taken by the city in the erection of this sloping platform, to make this place safe and convenient. For notwithstanding that inclined platform being there, and independently of its removal, and independently of the projecting plank, if that place was known to be a dangerous place to walk on,—if it was still unsafe,—if it was still unsafe for a man to travel at night,—and John Campbell knew it, and voluntarily took the risk, he cannot recover in this case; for that would be contributory negligence.

Now, I am desirous of making myself perfectly plain in regard to this most important part of the case—and perhaps the most important throughout the consideration of this case,—the question as to the knowledge by this man of the dangerous character of this place,—and that involves whether it was a dangerous place;—and that involves the further inquiry as to what that danger consisted of.  Did it consist of, or include that change of grade there, whether the sloping platform was there or not, or whether the danger arising by the abrupt change of that grade was sufficiently protected by the sloping platform; and did the increased danger, of which he knew nothing, according to his statement, arise from the removal of the platform, or incline, by the negligence of the city; or did the danger arise from the projection of that plank; and had the city notice, constructive or otherwise, of that?  If they had not, they are not chargeable for that on the ground of negligence.  If Campbell had knowledge of the way, and voluntarily tested it, he was guilty of contributory negligence, and cannot recover in this case.  Apart from the mere use of the highway, the considerations which I have already detailed to you may of themselves be contributory negligence.

The next question is was he guilty of negligence in his method and manner of approaching this place, taking all the circumstances into consideration?  Negligence in any case is the absence of proper care under the circumstances.  The degree of care which everybody must take depends upon the circumstances of the particular case; and there is no unvarying rule that can be laid down.  You cannot draw a line, and say everything on this side is negligence, and everything on that side is diligence; because the circumstances are not the same in each particular case;—and so we are to consider all the facts in this particular case.  This was a highway with an abrupt descent in it; and that at least was known to this plaintiff.  He has said so.  But independent of any other consideration, with the platform, or without, as has been asserted by one or two witnesses,—and it is a question of fact for you to determine, —knowing the condition of things there, at least to the extent of this abrupt change of grade,—whether he knew of the removal of the platform or not is another matter, about which I will speak to you presently,—he passed along that sidewalk at

a rapid pace, three or four miles an hour, with his hands in his overcoat pockets, on a very dark night. Now, the more dangerous the place, the larger measure of care was he bound to exercise to the extent of his knowledge of the existing danger. The darker the night, undoubtedly the more care was he bound to exercise;—for the man who uses a highway in broad daylight, and walks over an obstruction which is patent to him, and which by due diligence he could see, even if he did not, cannot hold the corporation for that obstruction. A man who walks through a street at night is bound to exercise more vigilance than the man who walks through there in the day. But the darker the night, the more the vigilance; and the absence of a light increases the degree which is required. Did this man exercise all due diligence which a man of ordinary prudence under the circumstances of the case,—the darkness of the night; the knowledge of the abrupt descent there,—did he exercise all due and ordinary diligence,—all due diligence which a man of ordinary prudence under those circumstances would exercise? If he did not, he is guilty of contributory negligence, and cannot recover.

[A single word in regard to his knowledge of this place, and I want you to bear in mind that that is so without any regard to the measure or degree of vigilance of the city in protecting that place, dangerous as it was,—even though it were, as in my judgment it was, a matter for the city of York, or those charged with the repairing of its highways, could and should have been indicted criminally;—notwithstanding that, if the negligence of the plaintiff contributed in any degree, he cannot recover. People are ordinarily supposed to know those things which come under their observation; which they have had opportunities to see, or opportunities to discover.] [4]

[I have already explained to you the important question as to this man's knowledge of the dangerous character of this place. I do not think I can enlighten you any further in regard to that. Now, then, as it seems to me, as far as we have gone, the controlling questions in this case are, What was the proximate cause of this accident? Did the accident result solely and only from the change of grade there, without any regard to the question of the presence or absence of the platform? Did it result from a projecting board, aided by the other cause?

The city undoubtedly had knowledge of the change of grade. Did it have knowledge, constructive or actual, of the projection of the plank?] [2]

Another thing, which I had almost forgotten. This platform, after having been maintained there a good while, was removed by Mr. Kaltreider, who threw it over into a field. A policeman came there, and the testimony of that policeman reveals the presence, and the taking away of the plank. It is clearly revealed in the evidence, that a policeman of the city of York came there and replaced the platform; and again it was thrown over into the field by Mr. Kaltreider. How long before this accident occurred that replacing and removal took place, is not revealed in the evidence; but the entire time during which the platform was lying over in the field was stated by the witnesses. The lowest period was six weeks, and the highest was three months. Did the city use due diligence in this particular? Did it provide for the replacing of the platform, or adequate means to protect the way, or use due diligence in maintaining it there?—are two material questions. Although if it be true that the platform remained away from there even during the shorter period in evidence, providing no protection to the people by that or other means, it was undoubtedly negligence of the city; for a patent defect of the highway like that would affect it with constructive notice in a much less period than six weeks.

Now, I have I believe gone over the controlling and preliminary considerations. First, did the accident result from the negligence of the city? Secondly, did the plaintiff's negligence in the slightest degree contribute to its production? If the city was not negligent, he cannot recover. If the city was negligent, and he was negligent also, and his negligence contributed in the slightest degree to the accident, he cannot recover.

And you, gentlemen, in such a case ought not to be governed by sympathy, or anything of that sort, in the determination of these questions. You cannot undertake to apportion the negligence, and say that the city was grossly negligent, and the plaintiff but little negligent; and therefore you will pay the plaintiff to a certain extent  You cannot do that. You cannot balance the degree of negligence; but in deter-

mining these questions you are to determine them in the light of the evidence, and the law as I have laid it down.

If the city was not negligent, or if the plaintiff contributed to the accident, then he cannot recover, and there is an end of the case.

[When you come to the question of determining the measure of damages, you will consider in that connection the Carlisle tables, showing the expectancy of life, which were also introduced. There is a case in Pennsylvania in which the Supreme Court have said that it seems that that probably is proper: Kraut v. Railway, 160 Pa. 327.

But you must not misunderstand the testimony. The Carlisle tables are based upon the mortality experience of insurance companies. Of course the insurance companies have gathered together a vast amount of statistics from which they are able to ascertain the average expectancy of life at any particular period; and of course those tables are based upon the selected lives,—for people are only insured by life insurance companies after having passed a medical examination insuring good health. At forty-seven the expectancy of life is twenty-three years. That does not mean to say that a man at forty-seven is going to live twenty-three years. He may die the next day; he may live to be ninety. It simply means that of people, aged forty-seven, the average existence of their lives will be about that. If there is a class of one hundred thousand living at forty-seven years, the average life of those whole one hundred thousand will be twenty-three years. Of course the duration of any particular life, such as this, cannot be predicted; and of course it depends largely upon the condition of health, —the physical condition of the man;—and depends largely upon the acts and conduct, and the liability to contract disease, and matters of that sort. I say this because I do not want you to assume that because the expectancy of life at forty-seven years is twenty-three years, that this man will live twenty-three years. He may live twice that; he may die to-morrow.] [1]

Verdict and judgment for plaintiff for $4,500. Defendant appealed.

*Errors assigned*, were (1) ruling on evidence, quoting the bill of exceptions: (2–5) above instructions, quoting them.

*W. F. Bay Stewart,* of *Stewart, Niles & Neff,* and *Robert F. Gibson, City Solicitor,* for appellant. The court admitted in evidence the American and Carlisle tables. The accident was not fatal nor was the injury such as to deprive the plaintiff of all earning power. These tables could not enable the jury to determine how long he would live or how badly he was injured. They could only add to their guessing machinery and the uncertainty of its results. The plaintiff was a man not in good health at the time of the accident, as the evidence sufficiently shows. He was surely not an insurable subject: Steinbrunner v. Ry. Co., 146 Pa. 504; Kraut v. Ry. Co., 160 Pa. 327; McCue v. Knoxville, 146 Pa. 580.

The defendant in this case was tried upon one charge of negligence, but convicted of another, and of that other it had no notice under the plaintiff's statement, and the court said, and it was justified by the evidence, that no notice of the defect in the pavement which caused the plaintiff's injury had been brought home to the defendant. This it would seem ought to have worked a different result: Campbell v. Ry., 139 Pa. 533.

To submit a fact destitute of evidence as one that may nevertheless be found is an encouragement to err which cannot be too closely observed or unsparingly corrected: Stouffer v. Latshaw, 2 Watts, 165; Sartwell v. Wilcox, 20 Pa. 117; Newbaker v. Alricks, 5 Watts, 183; Egbert v. Payne, 99 Pa. 239; Frazier Bros. v. Lloyd, 23 W. N. C. 178.

The whole controversy here was as to how the accident occurred, and the court charged wrong on the fact that plaintiff did strike his toe against something, and also on what it was. It was the pivotal part of the case and therefore the error is ground for reversal: Steinbrunner v. Ry., 146 Pa. 504; Yerkes v. Wilson. 81* Pa. 9.

Failure to look where one is going is negligence per se: Stackhouse v. Vendig & Co.; 166 Pa. 582; Robb v. Connellsville, 137 Pa. 42; Dehnhardt v. Philadelphia, 15 W. N. C. 214; Haven v. Bridge Co., 151 Pa. 620.

When it is added, as was proven in this case and not denied by the plaintiff, that the other side of the street was safe, and that that was the side which he customarily took when he went in and out King street, this case comes plainly under the rule requiring a man to avoid a danger when he has another safe

route, failure to do which is also negligence per se : Hill v. Tionesta Twp., 146 Pa. 11; Erie v. Magill, 101 Pa. 616; Winner v. Oakland Twp., 158 Pa. 405; Lynch v. Erie, 151 Pa. 380; Fleming v. Lock Haven, 15 W. N. C. 216; Scranton v. Gore, 124 Pa. 595; Easton v. Neff, 102 Pa. 478; Barnes v. Sowden, 119 Pa. 53; Robb v. Connellsville, 137 Pa. 42.

*N. M. Wanner, Allen C. Wiest* with him, for appellee.—The court below is sustained in its admission of the Carlisle tables of the expectancy of life by the case of Kraut v. The Frankfort & Southwark R. R., 160 Pa. 329.

Under the circumstances of this case it was exclusively for the jury to determine what was the proximate cause of the plaintiff's injury: Penna. R. R. v. Hope, 80 Pa. 373; Haverly v. State Line R. R., 135 Pa. 50; Thatcher v. Traction Co., 166 Pa. 66; West Mahanoy Twp. v. Watson, 116 Pa. 344; Penna. R. R. v. Trich, 117 Pa. 399; Bunting v. Hogsett, 139 Pa. 363.

The city was charged with the duty of inspection and watchfulness of the condition of the pavement, and if for want of due care and examination the city was ignorant of its condition, it was liable for resulting injuries, without notice : Vanderslice v. Philadelphia, 103 Pa. 102; Born v. Allegheny Plank Road Co., 101 Pa. 334; Hey v. Philadelphia, 81 Pa. 44.

The plaintiff's action cannot be defeated simply because he knew of an obstruction and did not take another safe road, which was open to him, if the one he used was also open to the public. Such a course of action is not contributory negligence, per se. Erie v. Schwingle, 22 Pa. 384; Humphreys v. Armstrong Co., 56 Pa. 204; Chilton v. Carbondale Bor., 160 Pa. 463; Bor. of Nanticoke v. Warne, 106 Pa, 373; Wellman v. Bor. of Susquehanna, 167 Pa. 239; Smith v. Lowell, 6 Allen, 39.

Even with the knowledge of the defect, if by lapse of time, the plaintiff had reasonable ground for supposing it to have been remedied, or if he was negligent in his manner of attempting to use the highway, his use of it is not necessarily of itself contributory negligence: Forker v. Sandy Lane Bor., 130 Pa. 123 Chilton v. Carbondale Bor., 160 Pa. 464; Wharton on Negligence, 403; Humphreys v. Armstrong Co., 56 Pa. 204; 4 Am. & Eng. Ency. of Law, 5.

Whether or not the plaintiff was guilty of negligence which contributed to the injury, must be inferred from all the facts and circumstances of the case as disclosed by the testimony. And such inferences of fact are for the jury and not for the court: Biggs v. West Newton Bor., 164 Pa. 341; Merriman v. Phillipsburg Bor., 158 Pa. 78; Gates v. Penna. R. R., 154 Pa. 567; Finnegan v. Foster Twp., 163 Pa. 135; Readdy v. Shamokin Bor., 137 Pa. 92; Crumlich v. Harrisburg, 162 Pa. 624; Bor. of Nanticoke v. Warne, 106 Pa. 373; Ottersbach v. Philadelphia, 161 Pa. 111; Bor. of Easton v. Neff, 102 Pa, 478; Kilkeary v. Thackery, 165 Pa. 584; 13th & 15th Pass. R. R. v. Boudrou, 92 Pa. 475; Gates v. Pa. R. R., 154 Pa. 572; Whissler v. Walsh, 165 Pa. 352; Sturgis v. Kountz, 165 Pa. 358; Iaquinta v. Traction Co., 166 Pa. 63.

OPINION BY MR. JUSTICE MCCOLLUM, January 6, 1896 :

The negligence of the city in the construction and maintenance of the sidewalk in question is obvious and undisputed, and it is established by the verdict of the jury that this negligence was the sole cause of the injury complained of. The city appears to have conceded its own negligence in the premises and to have based its defence on the alleged contributory negligence of the plaintiff. The questions raised by this defence and all the evidence relating to it were carefully presented to the jury for their consideration, with the repeated instruction that if there was any negligence on the part of the plaintiff which contributed in the slightest degree to the accident, he could not maintain the suit. The city has no cause to complain of the instructions on this branch of the case, as it is clear that the court would not have been justified in ruling that there was contributory negligence which precluded a recovery. The evidence tending to show the plaintiff's knowledge of the condition of the sidewalk, his manner of passing over it on the night of the accident, and his acquaintance with other streets and sidewalks in the neighborhood of it, were for the jury. From this evidence they found that his case was clear of contributory negligence. It cannot be justly said of the evidence that the weight of it is against the verdict or that it warrants a legal conclusion destructive of the plaintiff's claim.

The sidewalk, from the time of its construction until and

subsequent to the occurrence in question, was unsafe, and it exposed to casualities, like the one under consideration, all persons having occasion to pass over it at night. The municipal authorities were cognizant of its condition and the risks involved in traveling upon it, but they declined when requested, to incur the expenditure required to render it reasonably safe for public use. It is difficult to imagine a more flagrant disregard of official duty than was shown in this case by the representatives of the city who were charged with the supervision and care of its streets. There is some evidence which indicates that they supposed the sidewalk at the east end of it was in the township of Spring Garden, but as the evidence is clear and uncontradicted that it was constructed by, and within the limits of, the city there was no warrant for their supposition. It being established by a verdict supported by competent and sufficient testimony that the sidewalk at the point where the accident occurred was defective and dangerous, that it was known to the municipal authorities to be so, and that their negligence in the construction and maintenance of it was the proximate cause of the plaintiff's injury, a particular specification of its defects seems to be unnecessary.

The city's contention based on the second specification of error is without merit because it was not shown by either party that there was any change in the condition of the sidewalk from the time of its construction until sometime after the accident, except such as was made by the board bridge at the east end of it, or was the natural sequence of the manner of constructing it. The testimony of the plaintiff explanatory of his fall is consistent with the testimony descriptive of the condition of the sidewalk anterior to it, and the question whether the city had notice of the latter before the occurrence of the former was for the jury upon all the evidence in the case pertinent to it.

The city complains of the admission of the mortality tables and of the instructions in regard to them. In admitting this evidence the learned court below followed and was governed by the decisions of this court in Steinbrunner v. Railway Co., 146 Pa. 504; McCue v. Knoxville Boro., 146 Pa. 580, and Kraut v. Railway Co., 160 Pa. 329; and in commenting upon it, fairly conformed to the suggestion made in the case first cited. This complaint therefore furnishes no ground for reversing the judgment.

The contention based on the excerpts from the charge embraced in the third and fourth specifications of error has no substantial merit in it.   These excerpts considered in connection with the charge as a whole and in the light of the testimony in the case cannot be fairly characterized as misleading or prejudicial to the rights of the city.

The specifications of error are overruled and the judgment is affirmed.