## Emery *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Highway—Electric wire—Death.*

A municipality may not with impunity leave a highly dangerous and insidious obstruction, such as a heavily charged and exposed electric wire, on any part of a public highway or so near it that a traveler, accidentally or intentionally deviating a few feet from the beaten track, may encounter it to the risk of his life.

Where a person is killed by a heavily charged and exposed electric wire used by the police department of a city, the city is not relieved from liability by the fact that the accident occurred on the side of a road of which sixteen feet was macadamized in the middle, and that if deceased had kept to the macadamized portion of the road he would not have lost his life.

*Negligence—Damages—Death—Carlisle tables—Husband and wife.*

In an action by a wife to recover damages for the death of her husband, the Carlisle tables are admissible as evidence of the expectation of life of the husband, but cannot be used to show the plaintiff's own expectation of life.

Argued Jan. 8, 1904.    Appeal, No. 158, Jan. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1902, No. 1470, on verdict for plaintiff in case of Mary Emery v. Philadelphia.    Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.    Affirmed.

Trespass for the death of plaintiff's husband.    Before WILT-BANK, J.

At the trial it appeared that on March 10, 1903, Harry Emery, husband of plaintiff, was found dead on the east side of the Welsh road, a public highway in Philadelphia, between Bustleton and Holmesburg.    Death was due to an electric shock from contact with a broken fire alarm wire lying at the side of the road.    The road in question was forty-five feet wide, and sixteen feet of the road had been macadamized by the city.

The defendant presented the following points :

1. Under all the evidence in this case your verdict must be for the defendant.    *Answer :* That point I refuse. [1]

2. The city of Philadelphia is vested with discretion in the selection of the character and extent of the improvements to be made in the public highways within its boundaries.    If the authorities so desire, public roads may be maintained without paving of any kind so long as they are reasonably safe for travel.    And if the highway be opened to a width of forty-five feet, more or less, in a rural district, the authorities may designate what portion of it shall be used by travelers thereon ; in other words, they have the power to limit the use of the highway in such districts to the wrought way of the road, and thus limit the responsibility of the municipality for injuries sustained thereon by a person intentionally departing therefrom without reasonable necessity.    *Answer :* I decline so to charge. [2]

3. Where a person voluntarily leaves the part of the road which the public authorities have clearly marked out for travel, and in consequence is injured, the municipality is not liable, although the accident be due to a defect or obstruction existing within the road as laid out, but not upon or within the wrought way.  If you should find, therefore, the plaintiff's decedent alighted from his wagon and went upon the ground.

not designed or intended for public travel, and while there said decedent was killed in consequence of coming in contact with a wire charged with electricity, the plaintiff is not entitled to recover damages in this case, and your verdict must be for the defendant. *Answer :* I decline that point. [3]

4. If you find the plaintiff's decedent voluntarily left the wrought way and went upon ground not intended for public travel and while there met his death in consequence of coming in contact with a wire charged with electricity, your verdict must be for the defendant, even though you find that the ground upon which he was killed was within the lines of the Welsh road. *Answer :* I decline that point. [4]

5. It may be assumed that on the morning of March 10, 1902, the wrought way of the Welsh road was reasonably safe for public travel, and that if plaintiff's decedent had kept upon it no injury could or would have been sustained by him in consequence of the fire alarm wire falling from its position on the pole. The accident was due to the fact that said decedent entered upon that part of the road which the city had no reason to anticipate he would use. And even though you should find that said decedent's hat blew off and that the accident to him resulted from an attempt to secure it, the city was not bound to anticipate such an occurrence and to provide against it any more than it would be its duty to foresee that by some sudden emergency not due to a defect in the road, a pedestrian while traversing the same might be impelled in an attempt to avoid injury, to go upon the side of the road. The immediate and producing cause of the injury, therefore, was the action of plaintiff's decedent in leaving the wrought way of the road, and not the fire alarm wire at side of road. The city not being responsible for the action of plaintiff's decedent in leaving the road, your verdict must be for the defendant. *Answer :* I refuse that point. [5]

6. The testimony in this case will not warrant the inference that plaintiff's decedent left the wrought way of the road for the purpose of entering the field adjoining the road, or for the purpose of securing his hat, or for any other purpose, which would make the city liable for his death in consequence of coming in contact with the fire alarm wire, and your verdict, therefore, should be for the defendant. *Answer :* That I decline. [6]

7. The wire which caused Emery's death having been under the management, control and supervision of the electrical bureau, and used exclusively for fire alarm purposes, the city is not responsible for any accidents due exclusively to the careless supervision of said wire by the officials of said bureau. If you find, therefore, that Emery's death was due to the negligence of the officials of said bureau, or to the combined negligence of said officials and the said Emery, the plaintiff is not entitled to recover, and your verdict must be for the defendant. *Answer:* That I decline. [7]

8. In determining the question of the negligence of the city in caring for the highway, you are to take into consideration that the accident occurred on a country road in a sparsely populated district; that the traveled portion of the road was macadamized for a width of 16 feet; that the ground on the east side of the road between the macadam and the fence was unfit for travel; that the wire was located a number of feet from the improved portion of the road; that the grass in proximity of the wire was charred and blackened; that it could be readily seen by day, and that a red light was placed near it by night. *Answer:* That I decline to charge because it assumes as facts conclusions which must be left to the jury to be drawn from the proofs, and because it is not in all of its averments of fact testified to. [8]

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were (1–8) above instructions quoting them; (9) in admitting the Carlisle tables in evidence to prove the expectancy of Emery's life, over defendant's objection, there being no proof or offer to prove the age, condition of health, habits and expectation of the life of the widow plaintiff, or that she would have outlived him.

*J. W. Catharine,* assistant city solicitor, with him *John L. Kinsey,* city solicitor, for appellant.—Where the corporation maintains in good traversable condition a part of the road of sufficient width to reasonably accommodate the travel thereon, its full duty is discharged: Cartright. v. Belmont, 58 Wis. 370 (17 N. W. Repr. 237); Tritz v. City of Kansas, 84 Mo.

632; Austin v. Ritz, 72 Tex. 391 (9 S. W. Repr. 884); Perkins v. Fayette, 68 Me. 152; Arey v. Newton, 148 Mass. 598 (20 N. E. Repr. 327).

There being no duty to maintain a public road through an agricultural district in safe, traversable condition for its full width the municipality is not ordinarily liable for an accident happening to one intentionally and without necessity, leaving the wrought way: Scranton v. Hill, 102 Pa. 378; Monongahela v. Fisher, 111 Pa. 9; Worrilow v. Upper Chichester Township, 149 Pa. 40; Mattimore v. Erie, 144 Pa. 14.

The rule of nonliability of municipal corporations for accidents outside of the wrought way was recognized and applied in other states in the following cases: Blake v. Newfield, 68 Me. 365; Perkins v. Fayette, 68 Me. 152; Keyes v. Marcellus, 50 Mich. 439 (15 N. W. Repr. 542); Fisher v. Cambridge, 57 Hun, 296 (10 N. Y. Supp. 623); Arey v. Newton, 148 Mass. 598 (20 N. E. Repr. 327); Harwood v. Oakham, 152 Mass. 421 (25 N. E. Repr. 625); Biggs v. Huntington, 32 W. Va. 55 (9 S. E. Repr. 51); Fitzgerald v. Berlin, 64 Wis. 203 (24 N. W. Repr. 879); Burr v. Plymouth, 48 Conn. 460; Carolus v. New York, 19 N. Y. Super. Ct. 15.

It is not sufficient to prove the decedent's expectancy of life without proving also the plaintiff's expectancy of life: Baltimore, etc., Turnpike Road v. State, 71 Md. 573 (18 Atl. Repr. 884).

Where a parent sues for the death of a child, the necessity of considering the expectancy of life of the parent is obvious, and has been asserted in a number of cases: Little Rock, etc., Ry. Co. v. Voss (Ark.), 18 S. W. Repr. 172; Fordyce v. McCants, 55 Ark. 384 (18 S. W. Repr. 371); Louisville, etc., Ry. Co. v. Wright, 134 Ind. 509 (34 N. E. Repr. 314); Balt., etc., R. R. Co. v. State, 41 Md. 268; Maryland v. Balt., etc., R. R. Co., 1 Hughes (U. S.), 337.

*Fred. Taylor Pusey*, with him *C. J. Hepburn*, for appellee.— The duty required of the city was more than to merely keep the roadway clear of impediments to easy and convenient passing and travelling. It was required to exercise a careful police supervision of the electric wires suspended along its highways, to protect citizens from injury, and it was the duty of

the municipality to recognize and perform this duty in more than a perfunctory manner.: Herron v. Pittsburg, 204 Pa. 509 ; Mooney v. Luzerne Borough, 186 Pa. 161 ; Heh v. Gas Co., 201 Pa. 443 ; Koelsch v. Philadelphia Co., 152 Pa. 355 ; Cor-balis v. Newberry Twp., 132 Pa. 9 ; Dalton v. Tyrone Twp., 137 Pa. 21 ; Monongahela v. Fischer, 111 Pa. 9 ; Kennedy v. Williamsport, 11 Pa. Superior Ct. 91 ; Com. v. Shoemaker, 14 Pa. Superior Ct. 194.

The city was liable as owner of the wire : Dillon v. Alle-gheny County Light Co., 179 Pa. 482 ; Western Union Tel. Co. v. Thorn, 5 Am. Elec. Cases, 283 ; Electric Co. v. Simp-son, 5 Am. Elec. Cases, 278 ; Haynes v. Raleigh Gas Co., 114 N. C. 203 (19 S. E. Repr. 344) ; Newark Electric Light, etc., Co. v. Ruddy, 48 Cent. Law Journ. 49 ; Powers v. Phila., 18 Pa. Superior Ct. 621 ; Herron v. Pittsburg, 204 Pa. 509.

OPINION BY MR. CHIEF JUSTICE MITCHELL, March 28, 1904 :

The stress of the appellant's argument is in the contention that the city is not bound to keep its rural highways in safe travelable condition for their full legal width and as the body of the deceased was found outside of the " wrought portion " of the Welsh road, he must be assumed to have gone there at his own risk. The first six and the eighth assignments of error are based on this argument. But the learned judge could not have charged the jury on this view as it assumed facts which were not conceded. By the " wrought portion " of the road, appellant means a space of sixteen feet in width in the middle of the road which was laid with what appears to have been an unusually good macadam pavement. But it was in evidence that on each side of this paved strip was a smooth surface of sod or earth at the same level but inclining gradually to the sides and apparently intended for the same use, in fact what is commonly known in this part of the country as a " summer road " used by many travelers in good weather in preference to the macadamized stone. Moreover it is not conceded that the locality was clearly rural and the road at that point a mere improved country road. All of these matters were proper for the consideration of the jury in the whole case, and could not have been safely assumed by the court as admitted or proved beyond controversy.

But even if the facts had been conceded to be as appellant claims, the exemption from liability outside of the wrought portion of the road could not be carried to the extent appellant contends for. It is true that in some of the very numerous cases on the subject it is said that as to country roads the township or other municipality does its duty if it keeps a reasonable portion of the road in safe and convenient condition for travel, and that this rule applies in certain circumstances to roads which have become city streets, and that, as a corollary, a traveler who voluntarily leaves the safe portion of the road assumes the risks of so doing. But all these expressions must be read in connection with the special facts under consideration at the time. In Monongahela City v. Fischer, 111 Pa. 9, the traveler crossed the highway diagonally at night for the purpose of taking a footpath over adjoining land, missed the path, and fell over the outer wall of a culvert. The principal question in the case was the instruction of the trial judge on the subject of contributory negligence. This case which is the strongest on that side of the question it is said in Corbalis v. Newberry Township, 132 Pa. 9, " was a very close one . . . . and depended largely on its own facts, none of which were disputed." See also Scranton v. Hill, 102 Pa. 378; Merriman v. Phillipsburg Borough, 158 Pa. 78; and Wall v. Pittsburg, 205 Pa. 48, all of them likewise cases of injury occurring at night, where the traveler to that extent voluntarily encountered unknown risks.

But none of these cases give any support to the contention that the city, or even a borough or township may with impunity leave a highly dangerous and insidious obstruction, such as a heavily charged and exposed electric wire, on any part of a public highway, or so near it that a traveler accidentally or intentionally deviating a few feet from the beaten track, may encounter it to the risk of life. On the contrary it has been uniformly held that those using this new and dangerous agent are bound to the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to the wires, and liable to come, accidentally or otherwise, in contact with them : Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540.

The fact that the wires are owned or used by the city

as part of its police instruments, does not alter the rule, or exempt the city from liability under it: Mooney v. Luzerne Borough, 186 Pa. 161; Herron v. Pittsburg, 204 Pa. 509.

The only remaining question relates to the admission of the Carlisle Mortality Tables, as evidence of the expectation of life of plaintiff's husband. Those tables have been held admissible and that question is not now open: Steinbrunner v. Pittsburg, etc., Ry. Co., 146 Pa. 504; Campbell v. York, 172 Pa. 205; Kerrigan v. Penna. R. R. Co., 194 Pa. 98. They are not conclusive and are far from satisfactory evidence but are admitted from necessity because they are the best guide attainable to the establishment of a material but necessarily uncertain fact, the natural duration of the individual life which has been terminated by the injury in controversy. Uncertain and unsatisfactory as any test drawn from the general duration of life must be when applied to an individual case, it is better than the uninstructed guess of a jury. But the restrictions under which such testimony should be received and the cautions with which it should be submitted to the jury are clearly and authoritatively set forth by our Brother DEAN in Kerrigan v. R. R. Co. supra, and see also McKenna v. Citizens' Nat. Gas Co., 198 Pa. 31.

Appellant's assignment of error however is not founded on the simple admission of the Carlisle tables, but on their admission as evidence of the expectation of life of plaintiff's husband, without accompanying proof of plaintiff's own age and expectation. It is argued that while the husband might have lived a certain number of years, yet the wife might not, and therefore her damages ought to be limited by the double contingency of their joint lives. The point is new, and the fact that it has not been raised before in any of the very numerous cases where it would have been appropriate if sound, would seem to indicate that it has not appeared tenable to the professional mind. We are of this opinion. The life of the husband having been terminated by the accident, its probable duration in the regular course of nature must, as already said, be approximated by the best evidence attainable, even though that leads only to conjecture. But the widow, plaintiff, is living and is entitled now to compensation for what she has lost by her

husband's death.   To complicate the question by another con-. jecture as to her expectation of survivorship, would add further uncertainty in the result without being so clearly demanded by reason or justice as to be imperative or even advisable.

Appellant cites Baltimore, etc., Turnpike Road v. State, 71 Md. 573,* which seems to give the approval of a court of very high authority to this contention.   It appears however that under the Maryland code, action in such cases is brought by the state to the use of the widow and infant children, and the jury are to give " such damages as they may think proportioned to the injury resulting from such death to the parties respectively." It is not clear that this means more than that the jury instead of giving a lump sum to all, shall apportion their verdict among the various parties plaintiff.   If such be the meaning, the inquiry as to the widow's expectation of life would be relevant and material.   But under our statute, the widow without regard to her age or expectation of life, takes such proportion of the damages as she would have taken in her husband's personal estate in case of intestacy.   Hers is a present right regardless of age.   Whatever however may be the extent of the decision in the case cited, we do not think it should prevail against the general trend of the authorities, and especially the significant silence of our own cases in such a prolific field of litigation as deaths from negligence.

Judgment affirmed.