## Monongahela City *versus* Fischer.

1. In closely built up portions of a city it is the duty of the authorities to keep the entire street in a safe condition, but this is not the rule as regards country roads within the territorial limits of a city. It is sufficient if a portion of the width of the road is kept in smooth condition and safe and convenient for travel.

2. Contributory negligence in *any* degree on part of the plaintiff will prevent recovery in an action for damages.

October 19th, 1885. · Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Washington county :* Of October and November Term, 1885, No. 102.

This was an action on the case by August Fischer against Monongahela City to recover damages for injuries sustained by the plaintiff through the alleged negligence of the defendant in the construction of a culvert and its approaches in the public road within the city limits. Plea not guilty. .

On the trial before HART, P. J. the following facts appeared :

The accident occurred at the extreme edge of the city territory, within a few feet of the line of Carroll township, about a mile and a half from the built up portion of the town, and on the line of a common country wagon road, leading from the town, through farm lands up the river, parallel with, and about seventy-five yards distant from the Pittsburg, Virginia and Charleston railroad.

This road was originally constructed by Carroll township, under proceedings in the Quarter Sessions. It was of the width and general character of all township roads, laid out thirty-three feet wide, with a worked or wrought wagon roadway of from ten to sixteen feet, and running, generally, along the base of the river hill, with a cut on one side and a fill on the other. In 1873, that portion of the township was included by the lines of Monongahela City, as fixed by Act of Assembly, and since that time this road has been kept up by the city, but without any change of its character or plán.

At the place of the accident the road crosses a small stream. Until a year or two before the accident, a bridge of sixteen feet planks carried the highway over. But this becoming worn out the city substituted for it a culvert, sinking the bed of the stream between two and three feet; building two substantial stone walls six feet apart, six feet high from the bed of the stream, and about thirty-three feet across, though not exactly at right angles with the highway. This was covered with heavy plank.

The road reached and left the planking by approaches, about fourteen feet wide at the edge of the planks, and widening as they receded from the culvert. The sides of these approaches sloped down from the roadway to the ground at either side. Three of these side slopes were but slightly elevated. The fourth, on the river side of the roadway and east of the culvert, was between three and four feet at the highest point next the culvert wall, and gradually diminished as it reached toward the level ground. This construction was required there, because a water way existed along that side of the roadway, which had to be carried into the culvert within the lines of the highway, and for which provision was made by a hole left in the culvert wall.

At the time of the accident there were railings at the ends of the culvert over the stream but none along the side, nor along the approaches, three of these four approach slopes were but little elevated, and could be driven over at any point without danger.

The road from the town up, the culvert itself, and the roadway on the approaches were all in entire good repair.

The plaintiff lived on the road, about a quarter of a mile up the river from the culvert; he had lived for a year within seven to ten minutes walk of it. He admitted that he had crossed it at least five or six times; and his evidence shows that he had a perfect knowledge of its construction and condition.

In the afternoon of March 15th, 1882, he left his boarding house, walked down the railroad track to a point near the culvert, took a pathway over to the public highway, thence by some loose boards at the edge of the highway, thence up the eastern river approach, across the culvert to Nelson's store southwest of the culvert, across the road, and by another path to the railroad, and by it to town. Within a few hours and after night, he started from the town for home, intending to retrace his course of the afternoon. He crossed the railroad bridge, walked the ties of the railroad, and crossed again to Nelson's store. Here he remained in the lighted store a few minutes getting some powder and oil. He then started again, and proceeded immediately by the right-hand slope of the western approach to the culvert, about twenty steps; and thence diagonally across the culvert, "from the right-hand side to the left-hand side," intending "to leave the wagon road and take the footpath by Stewart's fence." When on the culvert 'he "could not see surrounding objects," and hunted with his feet for a center strip which he knew covered the abutting ends of the planks in the middle of the roadway over the culvert, and also on the far side of the

[Monongahela City v. Fischer.]

bridge or culvert for "the rut the wagon road had made in the road." Instead of finding what he hunted for, he "got over the embankment or steep grade;" he "had gone through the bridge when he fell." This is the plaintiff's account of it.

Under the evidence it was claimed: That the city was not bound to prepare the whole width of this highway for public travel; that its failure to prevent the plaintiff, under the circumstances, from voluntarily and unnecessarily diverging from the wrought and prepared roadway was not negligence. That even if the city had been in fault, the plaintiff was guilty of contributory negligence, by risking the crossing of a country road, at the place and in the manner shown; and in not pursuing the straight, though it might be unpleasant roadway when the whole character of the ground which he sought to traverse was fully known to him.

The plaintiff requested the court to charge inter alia as follows:

3. It was the duty of the defendant to afford the plaintiff (and all other travellers) a safe means of crossing the bridge, or of walking along the pathway on the approach thereto both in daylight and in the night time; and if the evidence warrants the jury in finding that the city did not provide such safe means of travelling the verdict should be in favor of the plaintiff, unless it appears from the evidence that his own negligence contributed in a material degree to the accident. This the court affirmed. (Third assignment of error.)

The defendant requested the court to charge inter alia as follows: 8. Under all the evidence the verdict should be for the defendant.

Answer: refused: the whole matter is submitted to the jury under the instruction given by the court. (Tenth assignment of error.)

Verdict for the plaintiff for $750, and judgment thereon, whereupon the defendant took this writ, assigning for error inter alia, the affirming the plaintiff's third point and the answer to the defendant's eighth point.

*Thomas H. Baird*, for the plaintiff in error.—The affirmance of the third point of the plaintiff without qualification or reference to the surrounding circumstances as shown by the evidence, was calculated to impress upon the jury that the defendant was bound to make its highway *safe* under all circumstances and at all times.

The duty imposed on cities is to keep their way safe and convenient for travellers. In the performance of this duty they are not bound to exercise the highest care, the most cautious and watchful vigilance, but they are bound to exercise ordinary

care, considering the nature and particular circumstances of the case. The law does not require that ways should be kept in a condition of such absolute safety as precludes the possibility of accident or injury. This would be wholly impracticable: City of Allegheny v. Gilliam, 30 Pitt. L. J. 461; Rapho v. Moore, 18 P. F. Smith 404; Thompson on Negligence, 761; Raymond v. Lowell, 6 Cush. 524.

There is also error in instructing the jury that it was the duty of the defendant to afford the plaintiff and all other travellers a safe means . . . . "of walking along the pathway on the approach."

"It is not required that a highway in its whole width as located should be fitted for travel. It is sufficient if there be a wrought road in good condition and of suitable width for all the needs of the people:" Farrell v. Oldtown, 69 Maine 72 (9 Cent. L. J.) 216; Perkins v. Fayette, 68 Maine 152; (28 Am. R. 84.)

"A city may elect to open streets only for a portion of its width, and is not in such case necessarily liable for injury occasioned by the existence of posts, stakes or other obstructions outside the travelled path:" City of Wellington v. Gregson, 31 Kan. 99 (6 Am. & Eng. Corp. C. 215); Fritz v. Kansas City (Mo.) 20 Cent. L. J. 237.

In Keyes v. Village of Marcellus, 50 Mich. 439, a case almost precisely like the present one, COOLEY, J. says, "The street though within the corporate limits, was in its use little more than a country highway, and it apparently accommodated the public travel conveniently and safely. . . . . . It is never expected that travel will occupy all parts of such a highway; nor can there be any requirement that the public authorities shall prepare for it." Reported also in 45 Amer. R. 52.

"The road may be inside the limits of a city corporation, and in fact a country road;"—per TRUNKEY, J.: Born v. Plank Road Co., W. N. C. 283, 285; see also Com'th ex rel. v. Phila. 11 W. N. C. 485; Pitt Township Road case, 8 W. & S. 74; Road from Fitzwater street, 4 S. & R. 106; Howard v. N. Bridgewater, 16 Pick. 189; Kellogg v. Northampton, 4 Gray, 65; 2 Thompson on Negligence, 768, 769, note 1; Woods on Nuisance, S. 320.

The charter of Monongahela City, plaintiff in error, authorizes the opening, repairing, etc., of "*roads;*" and provides that the "city shall not be obliged to open and make *streets,* until such time as the councils may deem them, or they may be found by view to be necessary for the accommodation of the public:" Act of March 24, 1873, § 10 P. L. 377, 378.

It is not to be presumed that because an accident happened there was negligence on part of the authorities. Something

[Monongahela City v. Fischer.]

more must be shown than that he was injured on the line of the road in order to make the municipality responsible : Borough of Easton v. Neff, 6 Out. 474.

*Dougan* (*Todd*, *A. W.* and *M. C. Acheson*, with him) for the defendant in error.—The instruction asked for in our third point had no tendency to beget the impression that the duty of the municipality was to make the highway safe under all circumstances and at all times.   The corporate authorities had been negligent in the construction of the culvert and of the approaches to the bridge is established by the verdict of the jury.   Had the defendant taken the precaution to erect guards before the accident (as it did after it occurred) Fischer would not have received the injury complained of.

Mr. Justice PAXSON delivered the opinion of the court, January 4th, 1886.

It was error to affirm the plaintiff's third point.   The effect of it was to declare that it was the duty of the defendant corporation to keep this country road in a safe condition for travel both by day and by night.   It is true the defendant is a city, and its charter provides that the corporate officers " shall cause the streets, sidewalks, alleys, courts, roads, lanes, squares, parks, etc., to be kept clean, clear of obstructions, dangerous openings, and in good condition and repair."   This, however, is but declaratory of the law as it exists throughout the state as regards the care of the public highways by municipal corporations charged therewith.   It imposes no burden upon this defendant corporation not resting upon other corporations of like character.

In the closely built-up portions of a town or city the duty of the authorities to keep the entire street and sidewalks in a safe condition may be conceded.   All portions of it are being constantly used by day and by night.   But this has never been held to be the rule as regards country roads.   They are seldom if ever kept in repair from side to side.   A sufficient portion of the middle only is kept in smooth condition, and safe and convenient for travel.   The rest is often left dangerous by reason of ditches and obstructions of various kinds: (Perkins v. Inhabitants of Fayette, 68 Maine 152; Com. v. King, 13 Metc. 115; Blake v. Newfield, 68 Maine 365; Keyes v. Village of Marcellus, 50 Mich. 439; City of Scranton v. Hill, 6 Out. 378.)

The affirmance of this point involved another error.   It imposed a qualification upon the doctrine of contributory negligence that has not heretofore been recognized.   It was that if the negligence of the plaintiff did not " contribute in

a *material* degree to the accident," he could recover. Without referring to the cases the doctrine of this court has always been, that if the negligence of the party contributed in *any* degree to the injury he. cannot recover. This is a safe rule, easily understood, and cannot well be frittered away by the jury. But if we substitute the word "material" for the word "any" we practically abolish the rule, for a jury can always find a way to avoid it. The rule itself is valuable, and rests upon sound principles. We are not disposed to allow it to be undermined.

By the defendant's eighth point the court was asked to instruct the jury to find for the defendant. This the court refused to do.

We are of opinion that the defendant was entitled to this instruction. ) There was no evidence of negligence on the part of the city.) The bridge and culvert where the accident occurred were well constructed and reasonably safe. It is true a man might, as the plaintiff did, walk off the end of it upon a dark night, and injure himself. ) But if there is a country road in Pennsylvania where a man groping about in the darkness of the night, without a staff or a light, may not be injured, I do not know of it. There are ditches, bridges, rocks, stumps and other elements of danger, outside of the travelled portion. The rule applicable to paved streets in cities has never been applied to country roads, and cannot be without serious injustice to the rural portions of the state.

As this view of the case cuts it up by the roots, it is not worth while to discuss the remaining assignments of error.

                                          Judgment reversed.