## John W. Plonk, Appellant, *v.* Samuel N. Jessop.

*Negligence—Explosion of gas—Contributory negligence—Question for jury.*

In an action against a plumber to recover damages for personal injuries, it appeared that the defendant's workmen undertook to mend a leak in a pipe in plaintiff's house. They went upstairs to find the leak, and when they came out they told plaintiff that everything was all right. Later in the day plaintiff, smelling gas in the hall, "lit a match the same as the plumbers did and laid it along the pipes," then "got a taper and lit that and started along up the pipes, clear up to the attic," where the explosion took place by which he was injured. The cause of the leak was the failure of a previous gas fitter to put a cap on the end of the pipe in the attic. The defendant's men knew from the rapid movement of the indicator in the meter that there was an important leak somewhere, but failed to locate it. Plaintiff admitted that he knew that gas would explode if brought in contact with the light. *Held,* (1) that there was sufficient evidence of defendant's negligence to submit to the jury; (2) that under the evidence the question of plaintiff's contributory negligence was for the jury.

Submitted May 21, 1896. Appeal, No. 295, Jan. T., 1896, by plaintiff, from judgment of C. P. York Co., April T., 1895, No. 73, of nonsuit. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, STEWART, J., filing the following opinion, by which the facts appear.

This is an action of trespass brought by the plaintiff against the defendant, a plumber and gas fitter, to recover damages

occasioned to the plaintiff through the alleged negligence of
the defendant, by an explosion of illuminating gas in the house
of the plaintiff whereby he sustained very severe injuries.  At
the trial upon the completion of the plaintiff's testimony, a com-
pulsory nonsuit was entered, on the ground of the plaintiff's
contributory negligence disclosed by his own testimony.  Prior
to April, 1893, the plaintiff, who is a brickmaker, and who tes-
tified that he is a contractor and builds houses occasionally,
built a house for himself, into which he moved with his family
on or about April 1, 1893.  While the house was in course of
erection he had gas pipes put through it and tested, the pumps
for that purpose being attached to the gas pipe in a small store-
room on the third floor of his house.  This operation the plain-
tiff saw.  Some time after he moved in, he had some gas fix-
tures put in, but not all through the house, and on the 24th
day of December, 1894, while he was living in the house, he
employed the defendant to put in some additional fixtures, and
to have the gas, which had not prior to that time been in the
house, turned on.  The defendant came in the forenoon of that
day, and with the plaintiff and his wife, went through the house,
and they pointed out to him where they wanted fixtures.  After
they had gone through the rooms on the second floor, the defend-
ant started as if to go to the third floor and was informed by
the plaintiff and his wife that they did not need any brackets on
the third floor as they didn't use it to any extent except to store
stuff there.  The defendant after having been shown where a
fixture was required in the kitchen, left the house and didn't
return any more that day.  In the afternoon he sent his em-
ployees to the plaintiff's house to do the work required, and
this they did, putting in some brackets and changing the chan-
delier; and the gas company's men also came and ran a pipe
from the street into the cellar, put up the meter and made attach-
ment to it.  The plaintiff testified: "After they had the con-
nections made to the meter, they turned the gas on; and I was
standing by there and I seen the indicator as they called it, in
the meter,—the small indicator in the meter that they call it,—
two foot,—that was going on around about as fast as a second
hand in a watch, and I made the remark to those men, ' Does that
hand always run that fast,' and they said, ' No,' that that did
not go that fast if all the jets were turned on in the house.; and

they said it was a leak. And I said, 'If a leak, you ought to fix it before you go away from here.' And they started to go up stairs to find the leak and I went outside to do some paving outside. . . . And when they come out, they come out through the kitchen, and I asked them if everything was all right, and they said everything was all right, and no more was said, and they started off right after that then, and I sat down to supper. I was not quite done supper yet, and my wife she went into the hall and came in and said she smelled gas in the hall."

After his wife came a second time and repeated that she smelled gas in the hall, the plaintiff got matches and lighted them and tried to find the leak along the pipes, and finding that process too slow he got a candle or taper and lighted it and tried it along the pipes, as he had seen the plumbers do, going upstairs and through the different rooms until he reached the storeroom in the attic. He opened the door leading into this and immediately there was a terrific explosion of gas which knocked him down, set all his clothes on fire and burned him badly, besides igniting the room. He fell or crawled downstairs, called for help and tools, went into the cellar and had the gas turned off and the fire was quickly extinguished. As a consequence he was blind for many days, ten or more, had to be fed through a tube, and for three months was unable to attend to business. In view of the character of the explosion he made an exceedingly narrow escape with his life. It was discovered afterwards that there was no cap on the gas pipe where it terminated in the little storeroom, and where the plaintiff had seen the pumps put on to test the system of gas pipes, and when the gas was turned on it flowed with full force through this exit. The plaintiff testified on cross-examination that when he went into the hall, after his wife had told him the second time that she smelled gas in the hall, that he smelled gas. The examination on this subject was as follows:

" Q. You are sure it was gas you smelt? A. Yes, sir. Q. Was it strong enough to be very perceptible? A. Yes, it was a strong current of gas. It wasn't strong enough to ignite. Q. You could smell it? A. It did smell bad enough for a leak. Q. As you passed up toward the third story did it smell stronger? A. Well, I didn't—it didn't seem so to me. I couldn't tell much difference in it. Q. It was very strong

everywhere? A. Yes, sir. Q. And when you got up to the third story didn't you smell it more than you did downstairs? A. I don't know—I guess I smelled it a little stronger. It wasn't strong enough to ignite until I opened the door."

After detailing the circumstances of the explosion again, and turning off the gas in the cellar, the witness said:

" Q. Did you not know that illuminating gas would explode? A. I often heard of it, yes, sir. Q. If it was brought in contact with a light? A. Yes, sir. Q. In the morning, or on the afternoon, rather, when the gas company's men were at work making the connection with the meter, you were there with a light were you not? A. Yes, sir; yes, there was a light setting, or did I make the light? I am not positive on that, and I wanted to give a light, and they told me I had better take the light away or it might explode, one of the gas men told me, and I took it away; and the reason I went with the light upstairs, I done as the plumbers done because I seen them hunt in the same way, with matches and with a taper."

I have reviewed the testimony with care since the filing of the notes, and hearing the argument as well as the authorities cited, and, in view of both, I am convinced that the entry of the nonsuit was proper. According to the plaintiff's admission he knew the explosive character of illuminating gas; he had, to use his own language, " often heard that it would explode if brought in contact with a light," and he virtually volunteered that " the gas men told him that afternoon when he wanted to give them a light, that he had better' take it away or it might explode;" but as if to break the force of this he follows it by saying, " I done as the plumbers done because I saw them hunt in the same way, with matches and a taper."

According to the plaintiff's admission he knew that there was or had been a serious leak in his house; that after he was informed that it was all right, the gas almost immediately manifested itself in a strong current, strong enough for a leak; that it would explode if brought in contact with a light which he knew from often having heard it, and from having been warned of it that afternoon. Notwithstanding this he lighted a candle to hunt the leak. Can it be said in view of this that he was not negligent, or that a jury on such a state of facts ought to find that he was not? The very element—the knowledge of

the explosive character of gas—absent in the case of Kibele v. Phila., 105 Pa. 41, and which would have ruled that against the plaintiff there, is present here. There the Supreme Court said : " If the plaintiff knew that illuminating gas was escaping from the main and also knew that from it an explosion might reasonably be expected, it was his duty to have withdrawn from the premises, or to have taken other precautions for his safety until the leak could be discovered and stopped. He could not knowingly take upon himself such a risk as this, the risk of an explosion, and for its consequences charge the city : " Kibele v. Phila., supra. To the same effect is Oil City Gas Co. v. Robinson, 99 Pa. 1. There the plaintiff who was a civil engineer entered a newly completed city sewer with a lantern in his hand, and an explosion occurred. The Supreme Court said : " The plaintiff was also bound to the exercise of a reasonable care for his own safety. He was a civil engineer and may be presumed to have had some knowledge of the dangerous nature of illuminating gas, of its power to penetrate the earth and the materials composing the sewer, and of its explosive character when mixed in certain quantities with common air. He certainly did know, for he so testifies, that the gas was escaping and saturating the adjacent earth ; hence it seems to us that he ought to have been on his guard. . . . If it was probable that the gas escaping from the leak would find its way into the sewer in quantities sufficient to produce an explosion, he ought to have anticipated the result and not have entered the sewer with a lighted lamp. If he did so under the conditions stated he was guilty of such contributory negligence as ought to have prevented his recovery : " Oil City Gas Co. v. Robinson, supra.

In Beittenmiller v. Brewing Co., 22 W. N. C. 33, the plaintiff, a carpenter, was employed with other workmen to put a stringer in the defendant's ice house. After working for a time the smell of ammonia became so strong as to affect their eyes, and they quit. About an hour afterwards the superintendent under whom they were working, finding they had quit, and the cause, directed them to go back, stating that the ammonia was not then so bad. The plaintiff did so, and very shortly after in doing his work his face was brought opposite a bolt hole in the wall from which a blast of ammonia was entering the room. He became senseless and fell to the floor and was in-

jured. In a suit for damages he was nonsuited on the ground of his contributory negligence, which the court refused to take off. The Supreme Court on appeal said: "The plaintiff has no one but himself to blame for the injuries he received. He knew the room was full of ammonia, and by continuing to work in it he assumed all the risks arising from that cause," and the judgment was affirmed: Beittenmiller v. Brewing Co., supra. Indeed the rule could not be otherwise. If a man walk into a place having the appearance of danger with his eyes open, he is not in a position to charge the party with negligence who created the dangerous condition: Payne v. Reese, 100 Pa. 302.

Was it proper for the court to enter a nonsuit? Where none of the essential facts is in dispute it is the court's duty to declare the law: Wannamaker v. Burk, 111 Pa. 423; Hill v. Tionesta Twp., 146 Pa. 11; Davidson v. Railway Co., 171 Pa. 522; Gray v. Penna. Railroad Co., 172 Pa. 383; Ely v. Railway Co., 158 Pa. 236.

All the facts affecting the question of contributory negligence were furnished by the plaintiff's testimony: Delaware R. R. Co. v. Cadow, 120 Pa. 559.

One cannot recover damages for an injury which by the exercise of reasonable care he might have avoided; and to this point there are numerous authorities, but one or two of them is sufficient: Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Township v. Anderson, 114 Pa. 643.

I am of opinion therefore that the nonsuit was properly entered, and now decline to take it off.

*Error assigned* was refusal to take off nonsuit.

The case was submitted on paper-books.

*H. L. & G. G. Fisher,* for appellant.—Plaintiff was guilty of contributory negligence: Wannamaker v. Burk, 111 Pa. 423; Davidson v. Ry. Co., 171 Pa. 522; Gray v. Penna. R. R., 172 Pa. 383; Stoughton v. Nat. Gas. Co., 159 Pa. 64; Hartman v. Incline Plane Co., 159 Pa. 442; Finch v. Conrade, 154 Pa. 328.

*Cochran & Williams, Niles* and *Neff,* for appellee.—Where the facts of a case are admitted or undisputed it is the duty of the court to pronounce the law arising thereon: Baker v. Gas Co.,

157 Pa. 600; Fisher v. Ry. Co., 131 Pa. 292; D. L. & W. R. R. v. Jones, 128 Pa. 314; D. L. & W. R. R. v. Cadow, 120 Pa. 559; Brossman v. L. V. R. R., 113 Pa. 493; Central R. R. of New Jersey v. Feller, 84 Pa. 229; Beittenmiller v. Bergner & Engle Brewing Co., 22 W. N. C. 33; Oil City Gas Co. v. Robinson, 99 Pa. 1; Kibele v. Philadelphia, 105 Pa. 41; Holly v. Boston Gas Light Co., 8 Gray, 123; McCully v. Clarke & Thaw, 40 Pa. 399; Baker v. Gas Co., 157 Pa. 600.

OPINION BY MR. JUSTICE MITCHELL, October 5, 1896:

The plaintiff testified that when indications of a leak in the pipe were discovered he told defendant's workmen that they ought to fix it, they " started to go upstairs to find the leak," and when they came out " they said everything was all right." Later in the day, plaintiff smelling gas in the hall, " lit a match the same as the plumbers did, and laid it along the pipes," then " got a taper and lit that and started along up the pipes, clear up to the attic," where the explosion took place by which he was injured. The place and cause of the leak were apparently attributable to the failure of a previous gas fitter to put a cap on the end of the pipe in the attic, but the defendant's men having seen from the rapid movement of the indicator in the meter that there was an important leak somewhere, and having left the work without having located it, yet assuring plaintiff that everything was right, there was sufficient evidence to submit to the jury of defendant's negligence.

But the plaintiff having admitted that he knew or had heard that gas would explode if brought in contact with a light, the learned judge below entered a nonsuit on the ground of contributory negligence. In so doing he failed to give sufficient weight to the circumstances, and to the plaintiff's explanation that he did as the plumbers did " because I saw them hunt in the same way with matches and a taper." The knowledge of the explosive character of gas certainly may be presumed to be general among persons who have it in their houses, and plaintiff admitted such knowledge. But how far a smell of gas indicates a leak that may safely be searched for with a match or candle, and at what point it means danger of explosion in so doing, is a question requiring judgment and some experience. Plaintiff had seen indications of a leak, had seen it searched for by de-

fendant's men with matches and a light, and had then been told that everything was right. When after that he smelled gas it could not be said as a conclusion of law that he necessarily had reason to suppose he would find anything more than a leak that might be safely searched for with a light as he had seen done by defendant's men earlier in the day. He may have been negligent in going into the attic as he did, but we think it is for a jury and not the court to say so.

Judgment reversed and procedendo awarded.

---

| 178 | 78 |
|-----|-----|
| 188 | 220 |

| 178 | 78 |
|------|-----|
| s192 | 63 |

| 178 | 78 |
|------|-----|
| s192 | 60 |
| 200 | 545 |
| 200 | 540 |
| 200 | 547 |
| 200 | 548 |

| 178 | 78 |
|------|------|
| p206 | 596 |
| 206 | ³598 |

| 178 | 78 |
|------|-------|
| d221 | ¹146 |