## Gerber v. Philadelphia, Appellant.

*Negligence—Municipalities—Open trench in street—Contributory negligence—Case for jury.*

1. Where a city has by proper proceedings widened a street which was actually built up, and thereafter through a contractor opened a trench along the untraveled portion of the street for the purpose of constructing a sewer, and places temporary crossings over the trench in front of the houses, as an invitation to those occupying the houses and those visiting them to use the crossings, the city is bound properly to guard and light such crossing at night as will reasonably protect persons using them; and if a woman in the night-time attempts to use one of the crossings without negligence on her part, and falls into the trench and is injured, the city is liable to pay her for the injuries which she had sustained.

2. In such a case if the woman has but a vague knowledge of the existence of the trench, and there is no light at the crossing to guide her, or barriers along the side to protect her, she cannot be charged with contributory negligence as a matter of law in attempting the crossing.

3. Where a city lets out a contract for the construction of a sewer in a street, and the contractor opens a trench in the street, and a person is injured one week thereafter by falling into the trench a jury may find that the city had constructive notice of the existence of the trench.

*Negligence—Damages—Loss of earnings.*

4. In a negligence case failure on the part of the trial judge to charge as to the present worth of future earnings and how they may be ar-

rived at, is not to be treated as an inadequacy of charge, but as reversible error, and this is the case although no request is made by either side for specific instructions on the subject.

Argued Dec. 2, 1914.   Appeal, No. 126, Oct. T., 1914, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1912, No. 1,924, on verdict for plaintiff in case of Esther Gerber v. Philadelphia.   Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Audenried, J.

At the trial it appeared that on October 9, 1912, in the evening, plaintiff was injured by falling into an open trench in Lindley avenue, Philadelphia.   The circumstances of the accident are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now was it the reasonable thing for the city's people to have left that trench without lights on it to indicate what its outline was?   Was it the reasonable thing for the city to have permitted the contractor to have thrown these foot crossings over the trench without putting hand rails on them to keep people who made the attempt to use them in the night, or might have occasion to use them in the night, from getting overboard? I have to leave that question to you.   Do you think the city authorities did what people of ordinary common sense would have done, in view of their knowledge of their duty to keep the street reasonably safe for use by people who had occasion to pass along it or cross it?

If you think there was negligence on the part of the city in failing to cause guard rails to be placed at the crossings laid over the trench, or lanterns to be placed there which would show just exactly where the trench has been opened, then if Miss Gerber herself was free of negligence which helped to bring about her

mishap, you may render a verdict in her favor to compensate her for the result of her injury.] [3]

[The duty of the city is to exercise a reasonable amount of care to keep its streets reasonably safe for people who use the streets with reasonable care for their own safety. The city had caused this trench to be opened. It was opened by the contractor, by the authority of the city which gave him the contract for doing what he did. The city's officials knew that the trench had been opened. Knowing that it was opened they were bound to take reasonable precautions to prevent people who were using the street, and who had occasion to go into the yards or lawns of the houses along the north side of Fishers lane, from coming to harm by reason of the presence of that trench. Did the city officials do that? What ought they to have done under the circumstances? Now, that is for you to say. Here was a trench in the bed of the street, in close proximity to the portion of the street which had been opened for use for years, which was not shut off, and from the use of which people were not excluded by any signs, or rails, or anything of that kind.] [4]

[If you think, however, that there were other results, and that her fall brought about her attack of tuberculosis, and in that way made it necessary, if you believe it was necessary, that she should leave home and go to White Haven, Wernersville and other places to get treatment, and expend the amount of money which she says she expended, or obligated herself to pay out to secure medical treatment and all that, and in this way has also been involved in a further loss of wages, she is entitled to have you take these matters into consideration in determining what award shall be made in her favor.

If you think the city is responsible for her mishap, and if its results will be prolonged in the future so that she will have to spend more money to keep her health, and that because her earning powers have been impaired

she will lose further wages, you may take that fact into account in her favor.] [8]

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* among others were (3, 4, 8) portions of charge as above, quoting them; (9) refusal of binding instructions for defendant.

*Thomas Boylan,* with him *Paul Reilly,* assistant city solicitors, and *Michael J. Ryan,* city solicitor, for appellant.

*Frank Rogers Donahue,* for appellee.

OPINION BY KEPHART, J., April 19, 1915:

Fishers lane, now Lindley avenue, was confirmed to a width of sixty feet by the bureau of surveys of the city of Philadelphia on December 19, 1892, and so appeared on the city plan on October 9, 1912. The traveled way within the street lines occupied but thirty-three feet of this width. The city of Philadelphia, by ordinance of December 2, 1911, directed the street to be enlarged to its full width. Within three months afterwards the property owners were notified and on June 7, 1912, the city filed its bond to the property owners for the additional land outside the traveled way necessary to make the full width of sixty feet. Under its title thus acquired, the city proceeded to subject the unused part of the street to a public use, by constructing through it a sewer line running parallel with the traveled carriageway or highway. A contract was let to one Crowley for the work, which was started October 2, 1912. No attempt was made to close the street to public travel. This unused portion of the street separated a number of houses on the north side from the traveled carriageway and sidewalk on the south side of the street. After the construction of the sewer

had commenced, ingress and egress to and from the houses might be had by temporary crossings in front of each house, made through openings in the earth thrown from the trench, and at these openings stones or boards about two feet in width were placed across the trench. The plaintiff had visited her sister shortly before the work started and on the evening of October 9, was returning to make another visit. When she reached the street it was quite dark, with sufficient light, however, for her to see dimly the openings in the earth at the temporary crossings. She approached what she thought was the opening in front of her sister's house. There were no lights to enable her to ascertain exactly her location. After crossing the trench and proceeding in what she believed to be the direction of her sister's house, she discovered that she was mistaken in the location of her sister's house as she found her progress barred by brush or barriers. Plaintiff endeavored to return to the crossing. The earth thrown up on the south side of the trench obscured any light that might have come from the street lights. There was no light at the crossing to indicate its location. She took but a few steps when she fell into the trench seventeen feet in depth, receiving injuries which brought on other illness.

When the city so subjected the land it had acquired for the use contemplated, it was bound to use every reasonable precaution to prevent injuries to those who might use the highway in obtaining ingress and egress over the improvement to and from the buildings abutting thereon. What is required is reasonably safe precautions considering the nature and character of the work and the extent of travel it was necessarily subjected to. If the city had closed the street to public travel and provided other means to reach the property, this plaintiff would have been bound thereby. When temporary crossings were placed as described in front of the houses, as an invitation to those occupying the

houses and those visiting them to use the crossings, it was necessary for the city as well to properly guard and light such crossings at night as would reasonably protect persons using them. Whether the city is liable for defects within the lines of a street, but outside its traveled way or path, depends to some extent upon the location of the street, and the use that is made of the street outside the traveled way. It has been held that in closely built up portions of the city it is the duty of the authorities to keep the entire street in safe condition: Monongahela City v. Fischer, 111 Pa. 9. The rule in districts other than closely built up communities depends to some extent upon municipal action with respect to the street, the intention to preserve the highway as a country road, and the use which of necessity must be made, or through convenience is made of the portion outside the traveled way: Wall v. Pittsburg, 205 Pa. 48; Emery v. Philadelphia, 208 Pa. 492; O'Malley v. Parsons Boro., 191 Pa. 612; Steel v. Huntingdon Boro., 191 Pa. 627. Where the use of the part not actually subjected to public travel is reasonably convenient to the enjoyment of the built up properties abutting thereon, while the city may not be required to keep level and free from defects all of the unused portion of the street, it would be required to keep the path of ingress and egress to and from the buildings reasonably free from obstructions; it would not be permitted to leave unguarded and unlighted at nighttime a trench seventeen feet deep with a bank of earth ten feet high on the side thereof. In O'Malley v. Parsons Boro., supra, the court says: "The underlying principle—recognized by approved text writers and many of our own cases as well—is that whenever, owing to the existence of embankments or excavations alongside of a public street or highway, it would be reasonably prudent and necessary to erect and maintain railings or other suitable barriers to prevent accidents to passengers traveling along, coming into or

leaving the public street or highway at customary and proper points, it becomes the duty of the proper municipality to provide such guards or barriers; and its neglect to do so will render it liable in damages to those, who, in the exercise of ordinary and reasonable care themselves, sustain injury in consequence of such neglect." "There is no doubt," says Mr. Justice DEAN, in Wall v. Pittsburg, supra, "that if a roadway be within the city limits and still be kept in all respects a country road, the duty of the city with regard to it is greatly relaxed. Nor is a municipality usually bound to lay out, open and construct streets until they are necessary for the accommodation of the public. But Primrose Street was not an ordinary public road as in Monongahela v. Fischer, supra; it was a regularly laid out street at the time of the accident, on the city plan, and had been so laid out for several years. . . . Perhaps incapable of such compact settlement fronting it as some other city streets, yet it had an established width, forty feet; was lighted, although poorly, by street lamps; had a board foot walk on the north side. Perhaps . . . . the duty of the city under the circumstances was not so rigid as imposed on it with reference to the closely built up parts, but relatively, it was the same." The facts as there presented are much in harmony with those in the present case, with the addition that in the case at bar the street was capable of compact settlement and was actually built up and the city had, by condemnation proceedings, divested the title of the abutting property owners, evidencing its intention of prosecuting the widening ordinance it had just passed.

The street having been left open for public travel, with the temporary crossings in place, brings the case in line with Johnson Co. v. Philadelphia, 236 Pa. 510, as to the liability of municipalities for injuries resulting from the work of an independent contractor in repairing a street.

The plaintiff's contributory negligence was properly submitted to the jury. She did not know that the trench was being dug and knew but vaguely that it was there, after she had reached the crossing. She succeeded in passing over the crossing in safety. It was on her attempted return that the injury took place. Becoming confused she took but a few steps when she fell. The absence of the light at the crossing to guide her, or barriers along the side of the trench to protect her, placed her in an extreme position of danger without fault of her own. It would have been error for the trial court to have held her guilty of contributory negligence as a matter of law. The ninth, tenth and eleventh assignments of error are overruled.

The fact that the work had actually started on October 2nd, the depth and length of the trench, with the temporary crossings in place for some time, was evidence from which the jury might find constructive notice. It is questionable if the letting of the contract itself was not sufficient notice to the city. The fourth and fifth assignments of error are overruled.

Complaint is made of the failure of the court to instruct the jury as to the proper measure of damages, in that it failed to particularly instruct that compensation to be allowed for any future loss of earnings must be its present worth. All that is said by the learned court with relation to future loss of earnings is embraced within the eighth assignment of error. It has been definitely decided that the failure to charge as to the present worth of future earnings and how they can be arrived at should not be treated as an inadequacy of charge, but as an erroneous charge. The authorities with respect to inadequacy of charge on the question of the measure of damages, where the verdict is reasonable and moderate, do not control, where the court failed to specifically charge on this essential element in connection with the measure of damages. As stated in Wilkinson v. N. E. Boro., 215 Pa. 486, "Under

such circumstances, it is not a question of inadequacy, but of error. In every case of negligence it is the duty of the court of its own motion to instruct the jury as to the proper measure of damages." In Goodhart v. Penn. Railroad Co., 177 Pa. 1, repeated in Wilkinson v. N. E. Boro., supra, it was held that: "When future payments are to be anticipated and capitalized in a verdict, the plaintiff is entitled to their present worth. That is the exact amount of the equivalent of the anticipated sum." The failure to thus charge, though no request was made by either side for specific instructions, was, of itself, held, in Wilkinson v. N. E. Boro., supra, to be reversible error. The trial court must know the law as to the true measure of damages. It will not be excused because counsel representing the parties do not know the law. If this were true, courts might easily relieve themselves of the responsibility of correctly charging the jury on the proper measures of damages by inquiring of counsel if there was anything wrong with their charge. The omission to so charge was no doubt occasioned by the hurry of the trial and the large amount of business this court must transact. The instruction as contained in this assignment of error is somewhat similar, though not as adequate, as that in McLane v. Pittsburg R. Co., 230 Pa. 29. The eighth assignment of error is sustained.

The first, second, third, sixth and seventh assignments, specifying errors in the charge of the court, are not material. Beyond the exception of the error just noted the charge was eminently fair. In it the learned judge explained the many objections raised by counsel for the appellant. The case was carefully tried and the verdict in view of the evidence was quite moderate. With the exception of the eighth assignment of error, all other assignments of error are overruled.

The judgment is reversed and a venire facias de novo is awarded.