## Johnston *v.* Wheatland Borough, Appellant.

*Negligence—Boroughs—Defect in side path—Contributory negligence.*

In an action by a woman against a borough to recover damages for personal injuries sustained by falling into a hole or ditch in a cinder side-path of a street, the plaintiff will not be entitled to recover where it appears that she knew of the hole, having frequently passed it, that she walked over the unlighted path in the dark, without a light, and that she could have avoided the accident if she had kept closer to a fence which bounded the path on the inside, or had walked in the roadway, which was practically on a level with the path.

Argued April 12, 1917. Appeal, No. 22, April T., 1917, by defendant, from judgment of C. P. Mercer Co., Oct. T., 1913, No. 104, on verdict for plaintiffs in case of Margaret J. Johnston and James W. Johnston, now C. N. Shilling, Executor, v. Wheatland Borough. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WILLIAMS, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for James W. Johnston for $300, and for Margaret J. Johnston for $1,000. Defendant appealed.

*Error assigned,* among others, was in refusing binding instructions for defendant.

*J. P. Whittla,* with him *Thos. W . Armstrong* and *Joseph W. Nelson,* for appellant, cited: Siegler v. Mellinger, 203 Pa. 256; Monongahela City v. Fischer, 111 Pa. 9; Devlin v. The City, 13 W. N. C. 338; Wall v.

Pittsburgh, 205 Pa. 48; City of Erie v. Magill, 101 Pa. 616.

*Davis, Fruit & Anderson* and *S. H. Miller,* for appellee.

OPINION BY ORLADY, P. J., March 2, 1918:

In September, 1911, when Mrs. Johnston received the injuries for which she seeks to hold the defendant borough liable, she was fifty-seven years of age, in good health; had lived in the borough for a number of years and was familiar with its streets, roads and their general condition.  While it was an incorporated borough, there were no paved streets or artificial sidewalks.  Emerson avenue, on which the accident happened, for about a quarter of a mile had nine (9) dwellings on one side of the street and one on the other; the roadway and pavement was only covered with furnace slag, and at the edge of the pavement was a gutter to take care of surface water; the two ways were practically on the same level. The accident happened in the evening when it was quite dark, while Mrs. Johnston was going from her house to a street car station.  As she described it, the pavement was safe and used generally by pedestrians; it was covered with smooth cinder, except in front of Glovers, where the walk was about four feet wide there was a ditch or opening that had been left after making a pipe connection with the dwelling.  This opening extended from the street into the sidewalk, from six to eighteen inches, had existed for some months and was of uneven depth, depending on surface washings and occasionally filling up.  She knew of this hole in the pavement, having frequently passed it, and as she says "I was walking in by the fence and watching carefully for fear I would walk into the ditch, knowing it was in bad condition." "I was watching to be careful, fearing it would happen, and I fell in the hole, that hole that was in the sidewalk." "I was looking where I was going."  Further she testified, viz: Q. Mrs. Johnston, you have stated that there

was a gutter coming all the way down the side of the hill. Is it not a fact that this hole that you fell into was a part of the gutter? A. I couldn't tell you. Q. You don't know? A. No, sir. Q. It may have been the gutter that you fell into? A. Well, I don't think it was the gutter. I think I fell into the hole. Q. You don't think it was the gutter? A. I don't think it was the gutter. I don't think any gutter is that deep. Q. Could you state that this hole was separate and apart from the gutter or was it part of the gutter? A. I couldn't tell that. Q. But you know that the gutter was coming all the way down, because you walked alongside of it, did you not? A. I walked and kept inside by the fence, to keep from the outside of the road, because I knew it was bad there. Q. Why didn't you take a light with you? A. I didn't think about a light. Q. How far could you see the roadway ahead of you? A. I just don't know how far. Q. Could you see the ground down in front of you? A. Yes, sir. Q. Then you were upon the sidewalk when you fell into the hole? A. I don't know where I fell in or slid in.

The question of her contributory negligence is not a close one. Her acquaintance with the dangerous sidewalk and her voluntary adoption of the path instead of the roadway, which was admittedly safe and easily accessible, placed upon her the burden of exercising care in proportion to the special circumstances of the case. As said in March v. Phœnixville Borough, 221 Pa. 64, "The municipality is bound to keep its highways in fairly safe and travelable condition, and travelers are entitled to presume that it will do so. Where the traveler has knowledge of a defect in the highway it does not follow as a legal consequence that he must under all circumstances avoid the use of it and reach his destination in some other way. It is a question of the character and imminency of the danger, and the difficulty or inconvenience of avoiding it. If the danger was serious and imminent it might be the traveler's duty, as a matter of law, to avoid it at any inconvenience; if, however, the

danger was trifling, and the inconvenience of taking another way was so great that an ordinarily prudent man would not subject himself to it, it would not be negligence not to do so.   Between these extremes are the countless gradations of danger and ways of avoiding it, depending on the circumstances." Her testimony is indefinite as to the place where she fell.   Had she walked along the fence, she would not have slipped into the hole at the edge of the walk, as it extended at most but eighteen inches of its four feet width, and if she walked or slid into the opening at the edge of the gutter she voluntarily assumed a manifest risk.   Making due allowance for her want of accurate recollection, and possible nervousness on the stand, the contradictions in her testimony were manifest, which emphasizes the importance of the fourth assignment of error, viz: "The court erred in charging the jury as follows: So in this case, even if Mrs. Johnston had known that there was some defect on this street and that the main roadway was safe, but she had been accustomed to walk along this cinder path safely and had no reason to believe that there was any defect in it, and was proceeding down the street carefully, would not of itself be sufficient to convict her of contributory negligence, because she took the cinder walk." To give special emphasis to this excepted quotation, it was preceded by the following statement by the trial judge: "From the fact that a person, injured upon a defective highway, was so well acquainted with its condition that he might be able to pass over it safely by the use of ordinary precaution, it does not necessarily follow, as a matter of law, that he was conclusively guilty of contributory negligence; the circumstances of the case may make this a question for the jury."

Under ordinary circumstances the statement of law by the court is free from error, but under the testimony of Mrs. Johnston, it was apparent that it was confusing, contradictory and liable to mislead the jury in weighing her testimony.   It could not be claimed that "she had

known that there was some defect on this street" and at the same time "had no reason to believe that there was any defect on it." The jury might well infer, under this phase of the charge, that she was at liberty to use a manifestly defective sidewalk without regard to the opportunity of using a safe roadway at its side. This instruction was called to the attention of the court in the defendant's sixth and eighteenth points, so that the question was fairly presented to the trial judge by counsel, as required in Burns v. Penna. R. R. Co., 239 Pa. 207. The danger was manifest, and it was the duty of the plaintiff to have avoided it, if she could have done so by the exercise of proper care under the circumstances, which would have been to take a safe way if one existed: Evans v. Philadelphia, 205 Pa. 193. This open ditch was an obvious, well-known and imminent danger. If we assume that the borough was negligent in allowing this cinder path or roadway to be carelessly maintained, it as clearly appears that Mrs. Johnston, in walking over this unlighted path in the dark without a light, did not exercise care in proportion to the known dangers immediately in front of her, and the jury should have been so instructed.

The judgment is reversed.