# Lawrence et ux., Appellants, *v.* Scranton City.

*Negligence—Municipalities—Explosion of gas—Proximate cause —Danger of gas — Knowledge — Presumption—Nuisance—Gas in manhole in street—Duty of care—Notice—Constructive notice— Case for jury—Contributory negligence—Reasonable use of highway—Striking match to light cigarette.*

1. Municipalities as governmental agencies have a discretionary power to abate certain kinds of nuisances, but they become civilly liable if they permit a nuisance to exist on their own property to the damage of others, or if damage results from a continued exist-

# 216 LAWRENCE et ux., Aplnts., v. SCRANTON CITY.

ence of a known nuisance on a street making the street unsafe for travel.

2. Though a given condition in a street may not technically be a nuisance, municipalities are liable for injuries sustained because of their failure to use ordinary care to keep the streets in a reasonably safe condition for travel.

3. Generally, to fasten liability on a municipality, it must have had notice of the condition for a sufficient length of time before an accident to have either cured the defect or prevented the injury; and such notice may be actual or constructive.

4. Where a negligent condition has existed for a period of time in which knowledge might have been obtained by the exercise of reasonable diligence, notice may be imputed.

5. Or if the municipality fails to make inspection with sufficient frequency to discover the condition, it is liable.

6. It is the primary duty of the municipality to keep its streets in travelable condition; and such duty cannot be delegated to another.

7. The duty and liability of the municipality is in no way lessened by the fact that individuals or corporations are subject to a like duty and liability.

8. While a municipality may presume that the instrumentality using the highway will adopt and maintain proper facilities, notice to the contrary will overcome that presumption.

9. A municipality may be presumed to know that illuminating gas is a dangerous agency.

10. If it knowingly permits illuminating gas of an explosive nature to accumulate for thirty days in a manhole in a street, and an accident results from an explosion, the question of the municipality's negligence is for the jury. In such case the gas in the highway is the proximate cause of the accident.

11. It is immaterial whether the gas came from a gas main of a gas company occupying the street, or from elsewhere.

12. Where a gas has been permitted to accumulate in a manhole in a street for a period of thirty days, and its presence is known by its smell, the act of a boy in striking a match on the cover of a manhole to light a cigarette, resulting in an explosion, is not in itself contributory negligence, but is a question to be determined by a jury.

13. Escaping gas is dangerous and known to all, but the point at which it becomes dangerous is not a well-known fact, but varies according to the circumstances, and is for the jury on the evidence.

14. The use of matches on the street to light a cigar or cigarette should be anticipated by the city as a reasonable use of the highways.

LAWRENCE et ux., Aplnts., *v.* SCRANTON CITY. 217

Argued May 5, 1925.   Appeal, No. 7, Jan. T., 1926, by plaintiffs, from order of C. P. Lackawanna Co., March T., 1923, No. 972, refusing to take off compulsory nonsuit, in case of John Lawrence et ux. v. City of Scranton.   Before Moschzisker, C. J., Walling, Simpson, Kephart, Sadler and Schaffer, JJ.   Reversed.

Trespass for death of plaintiff's son.   Before Newcomb, J.
The opinion of the Supreme Court states the facts.
Nonsuit; refusal to take off.   Plaintiffs appealed.

*Error assigned* was order, quoting bill of exceptions.

*R. W. Archbald,* with him *Wallace G. Moser,* for appellants.—The striking of a match on the cover of the manhole and the explosion which followed was a danger which the city was called upon to anticipate and guard against.

The boy who was killed was not guilty of contributory negligence as a matter of law: Oil City Gas Co. v. Robinson, 99 Pa. 1.

*Reese H. Harris,* with him *T. L. Hoban, Philip V. Mattes,* City Solicitor, and *Charles P. O'Malley,* for appellee.—The injury here was not the natural and probable consequence of any negligence upon the part of the city: Schaeffer v. Jackson Twp., 150 Pa. 145; Behling v. Pipe Lines, 160 Pa. 359; Pittsburgh S. Ry. Co. v. Taylor, 104 Pa. 306; West Mahanoy Twp. v. Watson, 112 Pa. 574; Wood v. R. R., 177 Pa. 306; Marsh v. Giles, 211 Pa. 17.

A city need only keep its streets safe for travel, not for playgrounds: Neil v. Monongahela, 54 Pa. Superior Ct. 324.

Opinion by Mr. Justice Kephart, June 27, 1925:
Plaintiffs' son, John Lawrence, aged fifteen, with his companions, was coasting on Clearview Street, Scran-

ton, on Christmas Eve. They gathered about a manhole in the street to await the arrival of another boy. While at the manhole, John struck a match on the iron cover to light a cigarette. An explosion of gas immediately followed, the boys were thrown in different directions, and the cover of the manhole was blown in the air, falling on John, so injuring him that he died shortly after.

The presence of gas was accounted for through a leak in a gas main some distance away. It followed a water-line to a pit constructed by the Scranton Gas & Water Company to house a water-meter. The pit, approximately five feet square and four feet deep, was sunk into the street about ten feet from the sidewalk, and its manhole was covered with a circular iron lid. An employee of the company visited it daily to examine the meter. For a month or so before the accident he continually found quantities of gas collected in the hole; at times he was compelled to remove the cover to permit the gas to escape before entering to read the meter. The odor of gas from the manhole was also observed by others for some weeks prior to the accident, and from its scent it was known to be illuminating gas. In an action against the city, a compulsory nonsuit was granted by the court below.

This appeal raises some interesting legal questions. We start with this basic principle of law which, to a large extent, governs the legal liability, if any, of the defendant:

Municipalities as governmental agencies have a discretionary power to abate certain kinds of nuisances, but they become civilly liable if they permit a nuisance to exist on their own property to the damage of others, or if damage results from the continued existence of a known nuisance on a public highway that makes it unsafe for travel: Scranton v. Catterson, 94 Pa. 202; Parker v. Macon, 39 Ga. 725; McDowell v. Village of Preston, 104 Minn. 263, 116 N. W. 470; Cohen v. Mayor of New York, 113 N. Y. 532, 21 N. E. 700. Though a

given condition in a street may not technically be a nuisance, the general rule is that municipalities having full and complete control over their streets are liable in damages for injuries sustained in consequence of their failure to use ordinary care to keep them in a reasonably safe condition for public travel: Aiken v. Phila., 9 Pa. Superior Ct. 502; Gerber v. Phila., 60 Pa. Superior Ct. 119; Haughney v. Mahanoy City Borough, 264 Pa. 482; Johnstown v. Wheatland Borough, 69 Pa. Superior Ct. 172, 174; Smith v. Shamokin Borough, 268 Pa. 170; Norbeck v. Phila., 224 Pa. 30; 13 R. C. L. sec. 258.

Generally, to fasten liability on a municipality, it must have had notice of the tortious condition complained of for a sufficient length of time before the accident to have either cured the defect or prevented the injury: North Manheim Twp. v. Arnold, 119 Pa. 380, 389; Burns v. Bradford City, 137 Pa. 361, 367; Frazier v. Butler Borough, 172 Pa. 407, 413-16; Duncan v. City of Phila., 173 Pa. 550, 554. And such notice may be either actual or constructive. Where a negligent condition has continued to exist for a period of time in which knowledge might have been obtained by the exercise of reasonable diligence, notice may be imputed; or, if the municipality fails to make inspection with sufficient frequency to discover the condition, the result is the same: McLaughlin v. City of Corry, 77 Pa. 109, 113; North Manheim Twp. v. Arnold, supra; Burns v. Bradford City, supra; Frazier v. Butler Borough, supra; Duncan v. City of Phila., supra; Norbeck v. Phila., supra.

Plaintiff's evidence was ample to go to the jury on the question of constructive notice, not only from the testimony of the inspector of the water-meter, but also from that of another witness who testified positively that he smelled gas coming from the manhole when he was sixty feet from it. There can be no question on this phase of the case; it was for the jury, and the court below was not in doubt on that point.

Admitting the preceding premise, the next problem is, Does it appear the city knew of the dangerous character of the substance collecting and escaping within the streets? If we assume that appellant's story of the case is correct, that the illuminating gas came from the pipes of the company occupying the highways of the city, we then have this proposition: The municipality permits its highways to be used for the purpose of transporting a highly dangerous substance. When such authority is given, inasmuch as the city knows that there will be a joint use of the streets by the traveling public and the transportation of the dangerous substance, may the municipality contend it did not know the dangerous qualities of the matter transported? Will it not be presumed to know? Had it then the right to assume that the use of the street for the purpose would be in a reasonable and prudent manner, with safe contrivances and appliances?

This approaches very closely to what has been said regarding the use of streets by electric light companies, telephone companies, and other concerns employing dangerous agencies or appliances likely to become dangerous by coming in contact with such dangerous agency. In such cases, we have held that it was the duty of the municipality to exercise careful supervision over its streets and to see that the construction and maintenance of electric wires suspended above them were in a reasonably safe condition: Mooney v. Luzerne Borough, 186 Pa. 161. If the appliances are out of order for a sufficient length of time to charge the city with notice, it will be responsible in damages for injury to pedestrians resulting therefrom. We stated, in Emery v. Phila., 208 Pa. 492, 498, that no case was cited that gave "any support to the contention that the city......may with impunity leave a highly dangerous and insidious obstruction, such as a heavily charged and exposed electric wire, on any part of a public highway, or so near it that a traveler accidently or intentionally deviating a few feet

from the beaten track, may encounter it to the risk of life. On the contrary, it has been uniformly held that those using this new and dangerous agent are bound to the very highest degree of care practicable to avoid injury to every one who may......come......in contact with [the wires]......The fact that the wires are owned or used by the city as part of its police instruments, does not alter the rule, or exempt the city from liability under it." If illuminating gas is a highly explosive substance, there seems to be no good reason why its occupancy of the street should not be surrounded by every generally well-known safeguard to prevent injury to the users of the street.

While the city might, within reasonable limits, presume that the instrumentality using the highway adopts and maintains proper facilities (City of Warsaw v. Dunlap, 112 Ind. 576, 14 N. E. 568), the jury, from the evidence, may find that the facilities were not proper or were defective, and that the city had notice thereof. The presence of gas on the street, as described, continuing for a period of time long enough to fix the city with knowledge of such improper construction or maintenance, makes the presumption of no avail.

But it is urged that, to support plaintiff's case, the court must assume, or the jury must find as a fact, that the gas was communicated to the manhole as indicated, and it was the gas of the agency occupying the streets. This, it is asserted, does not produce certainty of liability, in view of the well-known characteristics of gas. It is not such a violent assumption as would appear at first thought. We have not hesitated to so declare in other cases. See Koelsch v. The Phila. Co., 152 Pa. 355; Hartman v. Citizens Natural Gas Co., 210 Pa. 19. But we need not place our decision on this ground; there was sufficient evidence for the jury to find the presence of illuminating gas at and in the manhole for thirty days prior to the accident. Whether it came from the gas

main that occupied the street or elsewhere is immaterial; it was the city's duty to correct it.

"The primary duty of keeping its streets in travelable condition is on the city": Harvey v. Chester, 211 Pa. 563, 564; Aiken v. Phila., supra, 506. When public safety is concerned, this duty cannot be delegated to others. To the public it is immaterial what creates the dangerous condition; the city, after notice, is responsible to travelers therefor, even though the condition was brought about by third persons; this is so whether they operate under permits from the city (Harvey v. Chester, supra; McKelvey v. Juniata Borough, 265 Pa. 56), by agreement under a franchise (Aiken v. Phila., supra), under contract (Burger v. Phila., 196 Pa. 41; Gerber v. Phila., 60 Pa. Superior Ct. 119), after notice to make repairs (Meyers v. Phila., 217 Pa. 159), or are trespassers on the streets: Boyle v. Hazleton Borough, 171 Pa. 167. "The duty and liability of the municipality is in no way lessened by the fact that individuals or corporations are subject to a like duty and liability": Mooney v. Luzerne Borough, 186 Pa. 161, 164.

Did the city authorities know the combustible nature of gas? In other jurisdictions, courts have taken judicial notice of the qualities of artificial and natural gas. They are dangerous agencies, highly explosive and combustible: Jamieson v. Indiana Natural Gas & Oil Co., 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652; Hashman v. Wyandotte Gas Co., 38 Kan. 328, 111 Pac. 468; Alexandria Min., etc., Co. v. Irish, 16 Ind. A. 534, 44 N. E. 680. We have held that "the knowledge of the explosive character of gas certainly may be presumed to be general among persons who have it in their houses" (Plonk v. Jessop, 178 Pa. 71, 77), and the same rule should apply to a city where it is generally used. But the question of the knowledge of plaintiff and defendant is for the jury. The leading case is Kibele v. City of Phila., 105 Pa. 41. There the city was a manufacturer of gas, and, of course, being a manufacturer, was presumed to know its nature.

The court below held plaintiff guilty of contributory negligence. On appeal this court reversed, saying if the plaintiff knew gas was explosive it was his duty to have withdrawn from the premises; he could not knowingly take upon himself the risk of an explosion, and for its consequences charge the city. But whether or not he did know was a question for the jury. In applying the same rule here, we consider the use of illuminating gas in the City of Scranton, its explosive nature as a matter of common knowledge among those living in a community where it is used, with all the other circumstances of the case, make knowledge a question for the jury. This is the effect of Kibele v. City of Phila., supra; Plonk v. Jessop, supra; Stoner v. Pennsylvania Fuel Supply Co., 40 Pa. Superior Ct. 599, 601, and other cases.

Was the boy, when he struck the match at the manhole, guilty of negligence as argued by appellee? He could smell the gas, and while his knowledge of its dangerous character was for the jury, his lighting the match under the circumstances, says defendant, made the act a case for the court. We may concede a part of this statement as indicated in Plonk v. Jessop, supra. Escaping gas is dangerous, but the point at which it becomes dangerous is not a well-known fact. One may approach to within a certain distance from a leak with a light in safety, but, in approaching, that point is reached where the mixture of gas and air becomes dangerous. The location of this point is difficult to determine. Gas should be confined, the leak large enough to create some pressure, and the mixture about perfect. We have held that one may go into a cellar or attic with a lighted match, lamp, or lighted taper hunting along a gas line for a leak, and not be guilty of contributory negligence: Plonk v. Jessop, supra. The common practice of discovering gas leaks is by the use of a match or candle. In Plonk v. Jessop, supra, 77, plaintiff, who knew gas would explode if brought in contact with a light, used a match or burning taper to dis-

cover a gas leak, going into the cellar for that purpose. The court said "the knowledge of the explosive character of gas certainly may be presumed to be general among persons who have it in their houses, and plaintiff admitted such knowledge. But how far a smell of gas indicates a leak that may safely be searched for with a match or candle, and at what point it means danger of explosion in so doing, is a question requiring judgment and some experience," and that was for the jury. So it may be said as to this boy, assuming he knew gas was present, his knowledge of the danger point around the manhole where he struck his match, or his contributory negligence, is a question of fact for the jury.

It is not contributory negligence per se to use a match or lighted candle in trying to discover a gas leak, or to enter with a light a cellar or other closed place into which gas is escaping: City Gas Co. v. Webb, 117 Va. 269, 84 S. E. 645; Schmeer v. Gaslight Co., 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653; Plonk v. Jessop, supra; Stoner v. Pennsylvania Fuel Supply Co., supra. We may say without further comment that the use of matches on the street to light a cigar or cigarette should be anticipated by the city as a reasonable use of highways.

The court below seemed to be of the opinion that gas in the highway was not the proximate cause of the injury. We cannot agree to this, otherwise this court has been in error in deciding similar cases. After a careful consideration of the case, the judgment of the court below should be reversed; the question of the city's negligence and knowledge both as to the presence of gas and its destructive character were matters for the jury and should be submitted to that tribunal for consideration.

Judgment reversed with a venire facias de novo.